**Isel RICHIO, Plaintiff,**

v.

**MIAMI–DADE COUNTY, Defendant.**

**No. 00CV1406.**

United States District Court, S.D. Florida.

June 4, 2001.

Leslie Holland, Coral Gables, FL, for plaintiff.

William X. Candela, Dade County Attorney's Office, Miami, FL, for defendant.

**1355**

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

UNGARO–BENAGES, District Judge.

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment, filed February 6, 2001.

THE COURT has considered the Motion, the pertinent portions of the record, and is otherwise fully advised in the premises. Plaintiff filed her Complaint on April 20, 2000 alleging a claim for disability discrimination in violation of the Americans with Disabilities Act ("ADA" or "the Act"), 42 U.S.C. § 12101, *et seq.* Defendant now moves for summary judgment on the ground that Plaintiff is not disabled as defined by the ADA, the County granted her request for an accommodation and she was not constructively discharged. For the following reasons, Defendant's motion will be granted.

### LEGAL STANDARD

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The *Adickes* Court explained that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *See Adickes,* 398 U.S. at 157, 90 S.Ct. 1598; *Poole v. Country Club of Columbus, Inc.,* 129 F.3d 551, 553 (11th Cir.1997) (citing *Adickes* ).

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial. *See Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir.1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *See Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts then the Court should deny summary judgment. *See Impossible Electronic Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir.1982). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine,' ... if the evidence is such that a reasonable jury could return a verdict for the non-moving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *See Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *See Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611–12 (5th Cir.1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### BACKGROUND

The following material facts are viewed in the light most favorable to Plaintiff, the non-movant herein.[1]

In January 1993, Plaintiff was hired as a Consumer Protection Inspector in Miami Dade County's Consumer Services Department ("CSD") Call Center. The CSD is responsible for regulating and overseeing certain industries throughout the County. Def.'s Stmt. of Material Facts at 1 ("Def.'s Stmt."). Plaintiff's duties in the Call Center included receiving and logging customer complaints. She worked Monday through Friday from 8:30 a.m. to 5:00 p.m. She reported directly to Ray Stewart who reported to Mario Goderich, the director of the Consumer Protection Division. *Id.* at 2.

On May 8, 1998, Plaintiff's psychotherapist Diana de Cardenas wrote the CSD a letter that stated: "Please excuse Isel Richio from work due to emotional problems. She will be under my care for the next 60 days. Thank you for your time and cooperation. If I can be of further assistance to you, please don't hesitate to call me." Def.'s Ex. 1. On the same day Plaintiff filled out the Consumer Services Depart-

---

**1.** The Court notes that pursuant to Local Rule 7.5, all facts stated in Defendant's Statement of Material Facts that Plaintiff has not specifically controverted are deemed undisputed for the purposes of this Motion.

ment Metro–Dade County Leave of Absence Application Form. In question 2 entitled "Reason for the request. Check one reason and then *explain below:* " Plaintiff checked the box stating: "Family Leave as provided by Ordinance." In the same section, she also checked the box for: "Serious personal health condition which makes me unable to perform the functions of my position (Certification by health care provider will be required)." Plaintiff did not write anything in the "Explanation" section. Def.'s Ex. 2. However, according to her deposition testimony, Plaintiff had become depressed after her home was burned. Pla.'s Depo. at 34.

On May 14, 1998, Liliana Seiglie, the departmental personnel officer, wrote Plaintiff a letter stating in pertinent part:

Please be informed that you have been placed on a Medical Leave of Absence effective May 11, 1998 through July 10, 1998 according to the Family and Medical Leave Act of 1993 (FMLA). FMLA entitles you to take up to twelve weeks of unpaid or paid leave per calender year for specific family or personal medical reasons, with the guarantee of job protection. Since you are suffering an unforeseeable medical emergency that qualifies under FMLA, we are obliged by law to place you on a Leave of Absence.

Def.'s Ex. 3.

On June 24, 1998, de Cardenas sent the CSD another letter that stated: "Please excuse Isel Richio from work due to emotional problems. She will be under my care until August 6, 1998. Thank you for your time and cooperation. If I can be of further assistance to you, please don't hesi-

tate to call me." Def.'s Ex. 4. On the following day, de Cardenas sent another letter to the CSD stating: "Please excuse Isel Richio from work because she is still experiencing emotional problems. She will be under my care until September 30, 1998, where she may return to work. Thank you for your time and cooperation. If I can be of further assistance to you, please don't hesitate to call me." Pla.'s Ex. A. On the same day, Plaintiff sent a letter to Mario Goderich stating: "This is to inform you that as per my physician's orders, I need to extend my Leave of Absence until September 30, 1998. I am presently on medication and going to therapy." Def.'s Ex. 5.

On July 10, 1998, CSD Director Sheila Rushton sent Plaintiff a letter explaining:

FMLA entitles you to take twelve weeks of unpaid or paid leave per calendar year for specific family or personal medical reason. You are currently on FMLA until July 10, 1998. Please be advised that a 30 day extension has been approved until August 9, 1998 to complete your twelve weeks of FMLA.

Your requested leave from August 10 through September 30 is being denied until further information is obtained from your doctor. Based on your current job description, your doctor will be asked to provide us with more information on your medical limitations. You may be required to complete a Fitness for Duty evaluation by a County appointed doctor prior to our reevaluation of your request.

Def.'s Ex. 6.[2]

On August 12, 1998, Plaintiff reported to work, but was sent home early because her

---

**2.** While Plaintiff was on FMLA leave, Stewart required Plaintiff to call him on almost a daily basis. Pla.'s Depo. at 67. Sometime in the summer of 1998, Plaintiff's supervisor Mario Goderich brought administrative documents to the hotel where Plaintiff was living instead of giving them to another employee to deliver.

*Id.* at 68. Also during this time, Lee Sauls, a manager in the department where Plaintiff worked, stated in a management meeting that he thought Plaintiff was "faking" her condition. Quintana Depo. at 5; Millet Depo. at 24. Neither Stewart nor Goderich recall

blood pressure was very high. Pla.'s Depo. at 46–49. When Plaintiff returned to work the next day, she was placed in a clerical position in the same department. *Id.* at 46. While in this position, Plaintiff was allowed to leave to go to the doctor or home if she did not feel well. *Id.* at 46, 49. Plaintiff remained in the clerical position until the county doctor provided Defendant with the results of Plaintiff's fitness for duty report on October 9, 1998. *Id.* at 49–51.[3] The county doctor's evaluation stated in pertinent part:

> Dr. Haefner saw her, felt she had major depression signal episode moderate. He recommended for that the time being she not return to work and that the determination of her readiness for her returning to work be made by a therapist who she is being followed. So at this time I will make her unfit until she is cleared to return to work by her private physician.

Def.'s Ex. 6a. On October 9, 1998, CSD Director Sheila Rushton sent Plaintiff a letter notifying her she been placed on leave. The letter stated in pertinent part:

> We are in receipt of your Fitness for Duty physical examination. Based upon the medical recommendation of the County appointed doctor, you have been placed on a Leave of Absence without pay due to medical reasons until November 15, 1998. Please be advised that you will be required to submit medical progress reports from your attending physician every two weeks.

Def.'s Ex. 7.

On October 21, 1998, de Cardenas wrote a letter to Mario Goderich stating:

> I am writing this letter in behalf of Iselle Richio, who is presently undergoing psychological treatment with me.

Presently Iselle is not yet ready to return to work but if her progress continues as it has, I estimate she will be able to return as soon as November 1st. If I can be of further assistance to you, please feel free to call me.

Def.'s Ex. 8.

On November 1, 1998, upon de Cardenas' recommendation, Plaintiff returned to her regular duties in the Call Center. Pla.'s Aff. ¶ 5. According to Plaintiff, she was cleared to return to work without any restrictions. *Id.* Soon after her return, Plaintiff requested permission to work part-time as a promoter in addition to her full-time job with the CSD. This request was denied. Upon her return, Stewart advised Plaintiff that she could not take any type of leave until she had accrued leave time. Pla.'s Depo. at 61.

Plaintiff claims that upon her return Stewart scrutinized her more closely than her co-workers for socializing and for mistakes in her work. *Id.* at 73. In addition, Plaintiff claims that she was required to call Goderich if she was going to be absent or late, and was warned about not speaking with him directly on one occasion when she called in and told his secretary she was going to be late. *Id.* at 74–75. Plaintiff also claims Goderich told her on two occasions "why don't you just leave and find another job." *Id.* at 76.

On March 12, 1999, Plaintiff was issued a Disciplinary Action Report ("DAR") identifying several occasions when Plaintiff was absent or tardy from November 11, 1998 through February 26, 1999. Def. Ex. 9. The DAR also documented problems with the quality of Plaintiff's work and three incidents when she acted inappropriately or offensively towards other employ-

---

Sauls making this comment and Sauls was not disciplined.

**3.** On August 18, 1998, CSD directed Plaintiff to undergo a fitness for duty physical examination. Pla.'s Depo. at 50–51.

ees during working hours. Def.'s Ex. 13. On March 17, 1998, Goderich issued Plaintiff a written reprimand based on the DAR. Def.'s Ex. 12.

On April 1, 1999, Plaintiff submitted her resignation indicating that her last day of employment with the Consumer Services Department would be April 30, 1999. Def.'s Ex. 14. From the time Plaintiff returned to work on November 1, 1998 until her resignation on April 1, 1999, neither Plaintiff nor de Cardenas requested that Plaintiff be given another leave of absence. Pla.'s Depo. at 66. On April 9, 1999, Plaintiff threatened to kill herself at the workplace and was taken to the hospital. On April 12, 1999, CSD placed Plaintiff on administrative leave through April 30, 1999, the effective date of her resignation. Def.'s Ex. 13.

## LEGAL ANALYSIS

Plaintiff's Complaint contains what purports to be one claim for discrimination in violation of the Americans with Disabilities Act in which Plaintiff alleges that the Defendant failed to offer her reasonable accommodation and that she was constructively discharged. Compl. ¶¶ 10, 11, 15.[4] Plaintiff claims in the Complaint that beginning in May 1998 she was disabled within the meaning of the ADA because she was suffering from depression and that the County refused to reasonably accommodate her disabling psychiatric condition. Compl. ¶ 9; Pla.'s Resp. at 1. However, Plaintiff argues in her Response to Defendant's Motion for Summary Judgment that Defendant also discriminated against her by harassing her while she was on medical leave and by subjecting her to disparate treatment upon her return from leave. As these claims are absent from her Complaint, they will not be addressed by this Court except as they relate to Plaintiff's claim for constructive discharge.[5] *Maniccia v. Brown,* 171 F.3d 1364, 1367 n. 1 (11th Cir.1999) (citing *Case v. State Farm Mut. Auto. Ins. Co.,* 294 F.2d 676, 678 (5th Cir.1961) (noting the liberal construction accorded a pleading (now codified by Rule 8(f) of the Federal Rules of Civil Procedure) does not require courts to fabricate a claim that a plaintiff has not spelled out in his pleadings)). The Court, in other words, will consider Plaintiff's claim for disability discrimination based on Defendant's alleged failure to provide her a reasonable accommodation, and for harassment and disparate treatment only as they relate to Plaintiff's claim for constructive discharge. 42 U.S.C. § 12112(a), (b)(5)(A).

### (1) *Disability Discrimination*

To be eligible for relief under the ADA, a plaintiff must satisfy the same evidentiary burdens demanded by similar statutes addressing claims of employment discrimination. *See Earl v. Mervyns, Inc.,* 207 F.3d 1361, 1365 (11th Cir.2000); *Hilburn v. Murata Elecs. North America, Inc.,* 181 F.3d 1220, 1226 (11th Cir.1999). A crucial component in alleging discriminatory treatment by an employer based on conduct proscribed by the ADA, is proof of discriminatory motive. *See International*

---

**4.** The Court notes that the paragraphs in Plaintiff's Complaint are misnumbered. Three paragraphs have been numbered 15 and two paragraphs have been numbered 14. For the sake of clarity, the Court will refer to the paragraphs as if they had been properly numbered 1–19.

**5.** The fact that Plaintiff was hospitalized for threatening suicide on April 9, 1999 and has not worked since is irrelevant to this case. The employment action that Plaintiff is complaining about and that the Court considers in evaluating Plaintiff's claim began in May 1998 and continued up until she tendered her resignation on April 1, 1999. *Cash v. Smith,* 231 F.3d 1301, 1306 n. 5 (11th Cir.2000).

*Bhd. of Teamsters v. United States*, 431 U.S. 324, 325 n. 5, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). In establishing unlawful motive, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). In this case, the issue is whether the County intentionally discriminated against Plaintiff on the basis of a disability.

To establish a case of intentional discrimination, a plaintiff may rely on direct or circumstantial evidence. The Court's examination of evidence in the record reveals no direct evidence of disability-based disparate treatment. Plaintiff has not identified specific comments or incidents which can be considered unambiguous examples of discrimination, and Plaintiff does not argue that this is a direct evidence case. Accordingly, the Court will analyze the case under the burden shifting framework established for circumstantial evidence cases set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Once Plaintiff establishes her *prima facie* case, Defendant's burden on rebuttal is to produce a legitimate, nondiscriminatory reason for the challenged employment decision. *See id.* This burden is merely one of production, not persuasion, and is exceedingly light. *See Burdine*, 450 U.S. at 254, 101 S.Ct. 1089; *Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir. 1982). Once Defendant satisfies this bur-

den of production, in order to prevail upon her claims the Plaintiff must establish both that the proffered reason for the employment decision was false and that the real reason for the action was discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515–17, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ Under the ADA, an employer may not discriminate against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In order to establish a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate that (1) she is disabled, (2) she is a qualified individual,[6] and (3) she was subjected to unlawful discrimination because of her disability. *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir.2000) (citing 42 U.S.C. § 12112(a)).

A. *Prima Facie* Case

■ To satisfy the first element of a *prima facie* case of discrimination, Plaintiff must demonstrate that she has a disability under the ADA. The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); 34 C.F.R. § 104.3(j)(1); *see*

---

**6.** Defendant does not dispute that Plaintiff was a qualified individual under the ADA during the time she was on leave of absence and after she returned to work in November 1998, thus the Court will assume for the purposes of this analysis that Plaintiff was qualified for her position at the Call Center. In this regard, courts have found that where a leave of absence would reasonably accommo-

date an employee's disability and permit him, upon his return, to perform the essential functions of the job, that employee is otherwise qualified under the ADA. *See Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1135–36 (9th Cir.2001); *Nunes v. Wal–Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999).

*also Harris v. H & W Contracting Co.*, 102 F.3d 516, 518–20 (11th Cir.1996). Merely having a physical impairment is insufficient to be covered by the ADA. *See Gordon v. E.L. Hamm & Assoc., Inc.*, 100 F.3d 907, 911 (11th Cir.1996). Rather, to constitute a disability, "the impairment [must] substantially limit one or more of the individual's major life activities." *Id.* In this regard, the regulations promulgated by the Equal Employment Opportunity Commission ("EEOC"), state that "[m]ajor [l]ife [a]ctivities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The Eleventh Circuit has stated, "[a] physical or mental impairment qualifies as a disability under the ADA if it substantially limits a major life activity, such as working." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (citing *Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11th Cir.2000) (citing 42 U.S.C. § 12102(2)(A))).[7]

Defendant does not dispute that Plaintiff suffered from depression that could be regarded as an impairment. *See Pritchard v. Southern Co. Services*, 92 F.3d 1130, 1132 (11th Cir.1996) (noting that depression has been held to constitute a mental impairment). Defendant, however, contends that Plaintiff has not produced any evidence that she was limited in a major life activity during the relevant time period. *See Leisen v. City of Shelbyville*, 968 F.Supp. 409 (S.D.Ind.1997) (granting summary judgment because plaintiff suffering from depression was not disabled; depression did not limit a major life activity); *Hawkins v. Trustees of Indiana Univ.*, 83 F.Supp.2d 987, 994 (S.D.Ind.1999) (finding plaintiff could not establish a *prima facie* case of disability discrimination under ADA on a conclusory allegation of mental impairment); *Kvintus v. R.L. Polk & Co.*, 3 F.Supp.2d 788 (E.D.Mich.1998) (noting plaintiff's conclusory allegations concerning his depression and post Vietnam stress disorder did not constitute sufficient evidence to survive summary judgment). In this regard, Plaintiff states in a conclusory fashion that her depression limited her in the major life activity of working and then proceeds to argue in her Response memoranda that by denying her request for uninterrupted leave from May 8, 1998 through September 30, 1998, the County violated the ADA by failing to provide her with a reasonable accommodation. *See Mont–Ros v. City of Miami*, 111 F.Supp.2d 1338, 1352 (S.D.Fla.2000).

Although Plaintiff has not made any arguments supporting her conclusory statement that she was disabled, the Court will begin by determining whether Plaintiff has produced evidence from which a reasonable juror could conclude that she was limited in the major life activity of working from May 11, 1998 through October 9, 1998.

**B. Major Life Activity**

In determining whether a plaintiff is substantially limited in a major life activity, courts are to consider: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact, or the expected permanent or long term impact of or resulting from the

---

**7.** The Court notes that to the extent Plaintiff argues that she has a disability, she appears to contend that it impairs the major life activity of working. Plaintiff has not argued that she was disabled because she had a record of the impairment or that she was regarded as having the impairment. Thus, the Court will not address these prongs. *See, e.g., Swain v. Hillsborough County School Board*, 146 F.3d 855, 857 (11th Cir.1998) (noting that because the plaintiff made no argument that she satisfied the second or third prong of the definition, the court would only analyze the claim on the first prong).

impairment." 29 C.F.R. § 1630.2(j)(2); *Gordon,* 100 F.3d at 911.

■ Moreover, when the major life activity under consideration is that of working, the statutory phrase "substantially limits" requires, at a minimum, that the plaintiff allege that she is unable to work in a broad class of jobs. *Sutton v. United Air Lines,* 527 U.S. 471, 492–93, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). With respect to the major life activity of working, the EEOC defines "substantially limits" to mean "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i).

■ The EEOC further identifies several factors that courts may consider when determining whether an individual is substantially limited in the major life activity of working, including "the geographical area to which the individual has reasonable access," and "the number and types of jobs utilizing similar training, knowledge, skills or abilities, within the geographical area, from which the individual is also disqualified." 29 C.F.R. §§ 1630.2(j)(3)(ii)(A), (B). To be substantially limited in the major life activity of working, then, the plaintiff must be precluded from more than one type of job, a specialized job, or a particular job of choice. *Sutton,* 527 U.S. at 492–93, 119 S.Ct. 2139.

In her memorandum of law in response to Defendant's motion, Plaintiff has completely failed to engage in this step by step analysis of whether her depression impaired her in the major life activity of working during the relevant time period. In this regard, Plaintiff has failed to offer any evidence to demonstrate that her alleged condition was an impairment of a severe, extended duration, or involved a substantial permanent impact. Similarly, Plaintiff has not alleged or demonstrated that she was unable to work in a broad class of jobs. Likewise, Plaintiff has not presented any evidence detailing the class of jobs from which she was foreclosed, i.e., the number and types of jobs utilizing similar training, knowledge, skills or abilities within her geographical area that she is disqualified from holding because of her impairment.

■ Rather, in support of her claim that her depression prevented her from working from May 11, 1998 through August 9, 1998, Plaintiff has produced three letters from her psychotherapist and her Leave of Absence Application Form. In the first letter sent to the CSD, dated May 8, 1998, Plaintiff's psychotherapist wrote: "Please excuse Isel Richio from work due to emotional problems. She will be under my care for the next 60 days. Thank you for your time and cooperation. If I can be of further assistance to you, please don't hesitate to call me." Def.'s Ex. 1.

On the same day Plaintiff filled out the Consumer Services Department Metro–Dade County Leave of Absence Application Form. On this form, question 2 entitled "Reason for the request. Check one reason and then *explain below:* " Plaintiff checked the box stating: "Family Leave as provided by Ordinance." In the same section, she also checked the box for: "Serious personal health condition which makes me unable to perform the functions of my position (Certification by health care provider will be required)." Notwithstanding the instructions, Plaintiff did not write anything in the "Explanation" section. Def.'s Ex. 2.

Thereafter, on June 24, 1998, Plaintiff's psychotherapist sent the CSD another letter that stated: "Please excuse Isel Richio from work due to emotional problems.

She will be under my care until August 6, 1998. Thank you for your time and cooperation. If I can be of further assistance to you, please don't hesitate to call me." Def.'s Ex. 4. On the following day, Plaintiff's psychotherapist sent another letter to the CSD stating: "Please excuse Isel Richio from work because she is still experiencing emotional problems. She will be under my care until September 30, 1998, where she may return to work. Thank you for your time and cooperation. If I can be of further assistance to you, please don't hesitate to call me." [8] Pla.'s Ex. A.

In light of the fact that Plaintiff fails to make any argument to support her conclusory statement that her depression impaired her in the major life activity of working, the Court will only consider whether these letters alone are enough to support Plaintiff's claim that she was disabled from May 11, 1998 until October 9, 1998. According to these letters, de Cardenas requested Plaintiff be excused from work because she was suffering from "emotional problems." Although this statement alone was sufficient to trigger

Plaintiff's right to twelve weeks of FMLA leave,[9] for Plaintiff to receive the benefits and protection of the ADA she must show she was impaired in a major life activity because of her disability.[10] 29 C.F.R. § 1630.2(j)(2); 42 U.S.C. § 12102(2). In this regard, de Cardenas' letters to the CSD not only fail to mention that Plaintiff was suffering from depression, the disability upon which she basis her Complaint, but provide little insight into what ailment actually plagued her. Moreover, the letters fail to identity any symptoms from her depression that limit her from working. Likewise, Plaintiff has not submitted an affidavit or the testimony of her psychotherapist or any other medical evidence that between May 11, 1998 and August 9, 1998 she was disabled within the meaning of the ADA.

In this respect, the record in this case bears no resemblance to the facts in *Pritchard v. The Southern Co. Services*, 92 F.3d 1130 (11th Cir.1996) where the Eleventh Circuit determined a material issue of fact existed with regard to whether the employee was disabled within the meaning

8. Based on these letters the County placed Plaintiff on leave pursuant to the FMLA. On July 10, 1998, CSD Director Sheila Rushton sent Plaintiff a letter explaining:

   FMLA entitles you to take twelve weeks of unpaid or paid leave per calendar year for specific family or personal medical reason. You are currently on FMLA until July 10, 1998. Please be advised that a 30 day extension has been approved until August 9, 1998 to complete your twelve weeks of FMLA.
   Your requested leave from August 10 through September 30 is being denied until further information is obtained from your doctor. Based on your current job description, your doctor will be asked to provide us with more information on your medical limitations. You may be required to complete a Fitness for Duty evaluation by a County appointed doctor prior to our reevaluation of your request.
   Def.'s Ex. 6.

9. Once an employer is given notice that an employee is requesting leave for a FMLA-qualifying reason, the employer bears the obligation to collect any additional information necessary to make the leave comply with the requirements of the FMLA. *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir. 1999) (citing *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 761 (5th Cir.1995)).

10. It is apparent from Plaintiff's testimony that she was not aware of the difference between her rights under the ADA and FMLA and that to benefit from the protections of the ADA she was required to make a more substantial showing that she suffered from a disability than was necessary under the FMLA. In this regard, Plaintiff stated, "How come they had called me to go back to work in August, they extended one month, okay, and then in August they had called me to work, knowing that they had approved the disability and I was on disability then." Pla's Depo. at 37.

of the ADA. In *Pritchard,* the plaintiff, diagnosed with depression, produced evidence that at the time of her termination her symptoms included marked fatigue, lack of interest and energy, difficulty sleeping, communicating, and concentrating, suicidal thoughts, depressed affect and irritability. *Id.* at 1133–34. With this in mind, the Eleventh Circuit stated that this evidence "present[ed] a case for a jury to determine whether [plaintiff] suffered from those symptoms when she was terminated, and whether those symptoms substantially limited a major life activity." In contrast, no reasonable juror could find that the three letters from de Cardenas and the Leave of Absence Application Form upon which Plaintiff relies were sufficient to show that she was suffering from a disability that impaired her from working. *See also McIntyre v. Kroger Co.,* 863 F.Supp. 355 (N.D.Tex.1994) (finding letter from doctor typed on letterhead of psychiatric hospital requesting the plaintiff be transferred for a "health disorder" was insufficient as a matter of law to put defendant on notice that plaintiff had a covered disability). *Lewis v. Zilog,* 908 F.Supp. 931, 950 (N.D.Ga.1995) (noting even if employer knew that plaintiff had some type of stress-related medical condition, that alone is not sufficient to give notice of a covered disability for purposes of an ADA claim).

### C.  Reasonable Accommodation

■  Although Plaintiff has not produced sufficient evidence from which a reasonable juror could conclude that she was disabled within the meaning of the ADA prior to completion of her Fitness for Duty evaluation on October 9, 1998, the Court will next consider Plaintiff's claim that Defendant discriminated against her by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Terrell v. USAir,* 132 F.3d 621, 624 (11th Cir.1998) (citing 42 U.S.C.

§ 12112(b)(5)(A)). According to Plaintiff, the County should have accommodated her disability by providing her with an uninterrupted leave of absence from May 11, 1998 through September 30, 1998.

### (1)  Defendant Fully Accommodated Plaintiff's Known Limitations

As is apparent from the language in *Terrell* quoted above, the County was required by the ADA to reasonably accommodate Plaintiff's *known* physical or mental limitations. *Id.* It is, however, undisputed that when Plaintiff exhausted her FMLA leave and returned to work on August 12, 1998, she had not advised the County that she was suffering from major depression or otherwise disabled within the meaning of the ADA. Rather, the County only knew that Plaintiff was suffering from unspecified "emotional problems" and was requesting additional leave, but nothing more. Additionally, Plaintiff failed to provide the County more information despite the fact that Rushton had stated in her July 10, 1998 letter that "your doctor will be asked to provide us with more information on your medical limitations. You may be required to complete a Fitness for Duty evaluation by a County appointed doctor prior to our reevaluation of your request." Def.'s Ex. 6. Under these circumstances, the County had no legal obligation as of August 12, 1998 to accommodate Plaintiff, let alone accommodate her by providing her uninterrupted leave from May 11, 1998 through September 30, 1998.

Moreover, the County provided some accommodations to Plaintiff commensurate with her having unspecified "emotional problems." For example, the County granted Plaintiff's request for time off to go to the doctor on her first day back to work and sent her home early because her

blood pressure was very high. Pla.'s Depo. at 46–49. When Plaintiff reported back to work the next day, Defendant placed her in a less stressful clerical position rather than her high-paced investigator position, at the same rate of pay, even though Plaintiff had not requested any type of accommodation. *Id.* at 46. In the clerical position Plaintiff was allowed to leave to attend doctor appointments or go home if she felt ill. *Id.* at 46, 49. *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1286 (11th Cir.1997) (noting an employer is not required to offer plaintiff the accommodation of her choice, only a "reasonable accommodation").

Additionally, Plaintiff has not produced any evidence showing that she suffered any negative consequences from being required to work in the clerical position under the conditions described above. *See Willis v. Conopco,* 108 F.3d 282, 286 (11th Cir.1997) (noting the employee has the burden of requesting a reasonable accommodation); *Gantt v. Wilson Sporting Goods Co.,* 143 F.3d 1042, 1046–47 (6th Cir.1998) (stating "[an] employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation"). Accordingly, Plaintiff is unable as a matter of law to establish that Defendant violated the ADA by failing to provide her with a reasonable accommodation to meet her *known* physical or mental limitations.

### (2) Defendant's Accommodation Was Reasonable

Although Plaintiff failed to provide Defendant sufficient information to place the County on notice that she was disabled within the meaning of the ADA, the Court nonetheless will next consider Plaintiff's contention that Defendant did not provide her a reasonable accommodation addressing her major depression when the County denied her request for leave uninterrupted leave and required her to return to work on August 12, 1998.

■■■ According to the ADA, an employer must make a reasonable effort to determine an appropriate accommodation for an employee's disability when the employee notifies the employer of the disability or the employee's need or desire for an accommodation. *Gantt v. Wilson Sporting Goods, Co.,* 143 F.3d 1042, 1046–47 (6th Cir.1998). The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the employee with a disability. 29 C.F.R. § 1630.2(*o*)(2)(ii)(3) (2000). Under the ADA, the term "reasonable accommodation" may include, *inter alia,* job restructuring, reassignment to a vacant position, or even an extended leave of absence.[11] *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir.1997); 29 C.F.R. § 1630, App. (2000) (EEOC interpretive guidance on the ADA stating that a reasonable accommodation "could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment"). This list notwithstanding, "[t]he use of word 'reasonable' as an adjective for the word 'accommodate' connotes that an employer is not required to accommodate an employee in any manner in which that employee desires."

11. The term "reasonable accommodation" may include—

    (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

    (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities. 42 U.S.C. § 12111(9).

*Stewart,* 117 F.3d at 1285 (citations and internal quotations omitted). According to the Eleventh Circuit, "[t]his is so because the word 'reasonable' would be rendered superfluous in the ADA if employers were required in every instance to provide employees 'the maximum accommodation or every conceivable accommodation possible.' " *Id.* (citing *Lewis v. Zilog, Inc.,* 908 F.Supp. 931, 947 (N.D.Ga.1995)). Moreover, the employee bears the burden of identifying an accommodation that would allow her to perform the essential functions of her job, as well as the burden of persuasion with respect to showing that such accommodation is reasonable. *Id.* at 1286.

▆▆ Plaintiff claims that Defendant violated the ADA because she was required to work in the less stressful clerical position pending the outcome of her fitness for duty evaluation. However, the Eleventh Circuit has found this argument without merit. In *Terrell,* the Eleventh Circuit held that a plaintiff does not establish an ADA claim when an accommodation is delayed, as long as the employee receives some other accommodation or at least does not suffer adverse employment action. *Terrell v. USAir,* 132 F.3d 621, 627–28 (11th Cir.1998). In *Terrell,* the court found that the employer did not violate the ADA when the employer took three months to provide an employee suffering from carpel tunnel syndrome with a drop key board. The court concluded that the three month delay was not a violation of the ADA because the plaintiff had some access to a drop keyboard during the time she waited for her own and she was not required to type when she had no access to one. *Id.* Likewise, this Court finds that the County did not violate the ADA from August 12, 1998 until Plaintiff was granted another leave of absence on October 9, 1998, because during this time period Defendant provided Plaintiff with a reasonable accommodation. Specifically, the County placed Plaintiff in a less stressful clerical position where she was allowed to miss work if she felt ill or to take time off as needed for doctor's appointments. Moreover, Plaintiff has not produced any evidence showing that she suffered any negative consequences from being required to work in the clerical position under the conditions described above.

Additionally, the Court notes that even though the ADA does not require the employer to continue to pay an employee reassigned to a lower grade position the same salary when an accommodation is made, the County continued to pay Plaintiff the same salary in the clerical position to which she was reassigned, further evidence from which a jury could conclude that the County made Plaintiff a reasonable accommodation. *See* 29 C.F.R. § 1630 App.

In sum, Plaintiff has not produced any evidence from which a reasonable juror could conclude that Defendant violated the ADA by not providing her an uninterrupted leave of absence from May 11, 1998 through September 30, 1998. Accordingly, the Court will enter summary judgment against Plaintiff to the extent she claims that Defendant failed to reasonably accommodate her disability. *See Wilking v. County of Ramsey,* 153 F.3d 869, 874 (8th Cir.1998) (finding the employee did not establish pretext for disability discrimination in light of the evidence showing that the employer granted the plaintiff a medical leave of absence after her depression-related hospitalization, the employer accommodated the employee by allowing her to work reduced hours when she returned to work from her leave of absence and the employee did not ask for any further accommodations from her employer once her doctor released her to full-time work without restrictions).

(2) *Constructive Discharge*

▮▮▮ Plaintiff also alleges that she was constructively discharged when she tendered her resignation on April 1, 1999. To prove a constructive discharge under the ADA, "a plaintiff must demonstrate that working conditions were 'so intolerable that a reasonable person in her position would have been compelled to resign.'" *Griffin v. GTE Florida, Inc.*, 182 F.3d 1279, 1283–84 (11th Cir.1999) (quoting *Thomas v. Dillard Dep't Stores, Inc.*, 116 F.3d 1432, 1433–34 (11th Cir.1997)); *Hill v. Winn–Dixie Stores, Inc.*, 934 F.2d 1518, 1527 (11th Cir.1991) (holding a constructive discharge occurs only when there is a "high degree of deterioration in an employee's working conditions, approaching the level of intolerable"); *Poole*, 129 F.3d at 553. In addition, the plaintiff must show that the employer intentionally rendered the employee's working conditions so intolerable based on a protected status, such as disability, that the employee was compelled to quit involuntarily. *Henson v. City of Dundee*, 682 F.2d 897, 907 (11th Cir.1982). Moreover, whether the working conditions were sufficiently intolerable to amount to a constructive discharge is judged by an objective standard, not the employee's subjective feelings. *See Gartman v. Gencorp, Inc.*, 120 F.3d 127, 130 (8th Cir.1997).

Plaintiff bases her constructive discharge claim on the alleged fact that her supervisors Stewart and Goderich: (1) harassed her while she was on medical leave; (2) subjected her to disparate treatment upon her return to work on November 1, 1998; and (3) denied her request for leave

to attend doctor's appointments after she returned to work on November 1, 1998, including Plaintiff's request for leave to have her blood pressure checked on February 26, 1999.[12]

▮▮▮ Plaintiff claims that while she was on medical leave Stewart harassed her by requiring her to telephone him on almost a daily basis; Goderich harassed her by, on one occasion, delivering administrative paperwork to her hotel instead of giving it to another employee who lived close by; and Lee Sauls, another supervisor in her department, harassed her when he stated during a management meeting while Plaintiff was on leave of absence that she was "faking" her condition. As an initial matter, Plaintiff has failed to allege or produce any evidence showing how actions taken while she was on leave made her work environment intolerable. *Harris*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (stating a plaintiff must produce evidence that her *workplace* was permeated with "discriminatory intimidation, ridicule and insult ... sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment") (emphasis added).

Furthermore, although Plaintiff may subjectively believe that she was harassed by Stewart because he requested that she call him almost everyday while she was on leave and by Goderich when he stopped by her hotel, Plaintiff has not produced any objective evidence from which a reasonable juror could conclude that these inconveniences without more rises to the level of severe and pervasive harassment. In this

**12.** Plaintiff's Complaint does not state claims for harassment and disparate treatment, thus the Court will only consider these allegations as they relate to her claim for constructive discharge. In this regard, no reasonable juror could conclude that the incidents of harassment and disparate treatment Plaintiff allege made her working conditions so intol-

erable that a reasonable person in her situation would have felt compelled to resign. *See Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir.1997). Moreover, Plaintiff has failed to offer any evidence other than her unsupported belief that Stewart or Goderich took any action against her because she was disabled.

regard, the Court notes that even though her phone calls to Stewart were frequent, Plaintiff was responsible for initiating the calls and thus could control when she called Stewart. Likewise, Plaintiff has not alleged what transpired during these calls or during Goderich's visit to her hotel to support her claim that her supervisors' actions were objectively hostile, abusive, or interfered with her recovery. *See Harris*, 510 U.S. at 23, 114 S.Ct. 367; *Fleming v. Boeing*, 120 F.3d 242, 244 (11th Cir.1997) (discussing that although a plaintiff may subjectively feel that the environment is hostile, it must in fact be objectively hostile); *Prado v. L. Luria & Son, Inc.*, 975 F.Supp. 1349, 1355 (S.D.Fla.1997) (finding no hostile work environment where facts did not objectively show discrimination even though plaintiff felt humiliation over mimicry of her accent).

■ Likewise, Plaintiff has not shown how Sauls' remark, made outside her presence, and Goderich's comment, "why don't you just leave and find another job?" made her working conditions intolerable. *See Rio v. Runyon*, 972 F.Supp. 1446, 1460 (S.D.Fla.1997) (stating that occasional adolescent, rude or insensitive comments are not actionable); *Prado*, 975 F.Supp. at 1355 (noting in a hostile work environment action the conduct complained of must be persistent and routine rather than isolated or sporadic in nature in order to be sufficiently severe and pervasive to alter the conditions of plaintiff's employment); *Mistretta v. Volusia County Dep't of Corrections*, 61 F.Supp.2d 1255, 1265 (M.D.Fla. 1999) (finding that behavior by co-workers who ridiculed plaintiff and mimicked his anxiety attacks may have been inappropriate, but was not sufficiently severe or pervasive to create the type of "hellish" environment that is prohibited by the ADA). Thus, viewing the evidence in the light most favorable to the Plaintiff, no reasonable juror could conclude that Stewart's actions, Goderich's comments and actions, and Sauls' comments made her working conditions intolerable.

■ Plaintiff has also failed to show how her claims of disparate treatment and adverse employment action were related to her disability or how they made her working conditions intolerable. Plaintiff has not produced any evidence, other than her own unsupported belief, that Stewart told her not to socialize with her co-workers or checked her work and reprimanded her for mistakes because of her disability or because he regarded her as disabled. *See Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 594 (11th Cir.1987) (stating "[t]he ultimate question in a disparate treatment case is not whether the plaintiff established a prima facie case or demonstrated pretext, but whether the defendant intentionally discriminated against the plaintiff") (internal quotation omitted). Insofar as Plaintiff offers the testimony of Maria Panizo to support her claim that other employees who made spelling and grammar mistakes were not disciplined, Panizo's testimony, without any evidence of the number and type of mistakes she made, is insufficient to show that the two employees were actually similarly situated with regard to the errors in their work product. In light of the uncontroverted evidence that Stewart rejected some of Plaintiff's work product because it contained errors, Plaintiff cannot reasonably claim that this created an intolerable working environment. *See Weaver v. Tech Data Corp.*, 66 F.Supp.2d 1258, 1270 (M.D.Fla.1999) (stating "[u]nder Title VII, an employer is entitled to make employment decisions and is entitled to interpret employment rules in any manner the employer chooses, so long as that decision or interpretation is not performed in a discriminatory fashion").

■ Likewise, Plaintiff has not produced evidence showing that her working conditions were made intolerable because

she was required to follow different procedures for notifying Goderich that she was going to be late or absent than other employees. According to the undisputed evidence, Goderich had a policy that employees had to page him directly when they were going to be out sick or when they were arriving late. Goderich Depo. at 28–29. One morning, Plaintiff called Goderich's office during business hours to inform him that she was going to be late and left a message with his secretary. Pla.'s Depo. at 74–75. When Plaintiff arrived at the office that day she received a warning for failure to contact Goderich directly. Plaintiff contends that by disciplining her for this incident Goderich treated her differently than similarly situated employees who were not reprimanded for failing to contact Goderich directly when they were going to be late or absent. Notwithstanding Plaintiff's contention, two of her co-workers, Armando de la Torre and Maria Panizo, both testified that on the occasions when they were going to be late or absent they first tried reaching Goderich on his beeper and when they could not reach him left other messages for him. de la Torre Depo. at 12; Panizo Depo. at 9–10. In contrast, Plaintiff has not alleged that she first tried to contact Goderich on his beeper in accordance with his policy before leaving him a message with his secretary. Thus, Plaintiff has not produced evidence showing that her working conditions were made intolerable because she was treated differently than her co-workers. *See Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1185 (11th Cir.1984) (noting a plaintiff is required to prove that her conduct was "nearly identical" to that engaged in by employees outside of plaintiff's protected class that were not subjected to adverse employment action); *Weaver,* 66 F.Supp.2d at 1270 (noting if a plaintiff does not satisfy the burden of showing that non-minority, similarly situated employees were treated more favorably, the plaintiff's case cannot succeed).

Additionally, Plaintiff contends that Defendant took adverse employment action against her by issuing a Disciplinary Action Report and written reprimand that set forth incidents where Plaintiff's work was deficient because of incorrect spelling and/or grammar, Plaintiff made offensive remarks and engaged in antagonistic behavior towards supervisory personnel and Plaintiff was tardy or absent from November 11, 1998 through February 25, 1999. Def.'s Ex. 13. According to the undisputed evidence this disciplinary action report was the lowest level of reprimand and had no affect on any terms or conditions of Plaintiff's employment. As such, Plaintiff is unable to produce any evidence that this report amounted to adverse employment action or made her working conditions intolerable. *See Mora v. University of Miami,* 15 F.Supp.2d 1324, 1335 (S.D.Fla.1998) (noting "[i]t is clear ... that not all employment actions are actionable under Title VII"). *See Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 781–81 (8th Cir.1995) (stating that unless an employer's business decisions involve intentional discrimination, the federal courts do not review the decision's wisdom or fairness); *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 707 (5th Cir.1997) (noting that Title VII does not address every employment decision, only those that are final, including hiring, discharging, promoting and compensating).

Lastly, Plaintiff contends that Stewart's actions amounted to constructive discharge because upon her return to work in November 1998, he told Plaintiff she could not have any time off, including for medical leave, and he denied her request for leave to attend a doctor's appointment on February 26, 1999 to get her blood pressure checked. Although Plaintiff does

not clearly articulate this claim, she appears to be contending that upon her return to work Defendant made her working conditions intolerable by failing to accommodate her medical needs. Plaintiff, however, has not presented any evidence that when Stewart informed her that she could not have any time off that he treated her differently than any other employee who had similarly exhausted all his/her accrued leave time. *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir.1984). Likewise, Plaintiff has not presented any evidence that she was entitled to leave time and her request was denied or that Defendant was required to accommodate Plaintiff's medical needs upon her return to work on November 1, 1998 and failed to do so.

In this regard, Plaintiff has not produced any evidence that she was substantially limited in any major life activity or regarded as disabled as of November 1, 1998. *See* 29 C.F.R. § 1630.2(g) (2000). Rather, Plaintiff testified that on November 1, 1998, she had been cleared by her psychotherapist to return to work without any restrictions because her condition had improved. Pla.'s Aff. § 5. Plaintiff also testified that from November 1, 1998 through the date of her resignation on April 1, 1998, she was able to work, care for herself, drive and clean. Pla.'s Depo. at 64–65, 139. As further evidence that Plaintiff was able to work full-time without any accommodation, Plaintiff requested permission to accept a part-time job as a promoter in addition to her full-time schedule at the Call Center on November 18, 1998. Viewing this evidence in the light most favorable to the Plaintiff, a reasonable juror could only conclude that as of November 1, 1998, Plaintiff was no longer impaired in the major life activity of working and thus was not disabled as defined by the ADA. As such, Plaintiff has no claim that Defendant failed to accommodate her medical needs by refusing to give

her time off that she had not yet earned, even for medical reasons. Accordingly, Plaintiff has not shown how Defendant's actions in this regard created an intolerable working environment. *See Durley v. APAC, Inc.*, 236 F.3d 651, 658 (11th Cir. 2000) (finding evidence showing that manager harassed plaintiff regarding medically necessary absences and tardiness, that the harassment increased after she filed her EEOC charge, that her fellow employees treated her negatively and that her raise was comparatively lower than others did not constitute intolerable working conditions required to sustain a claim for constructive discharge); *Wardwell v. School Board of Palm Beach County*, 786 F.2d 1554, 1557 (11th Cir.1986) (finding that employer's failure to promote plaintiff, her resultant embarrassment, and increased workload did not rise to an intolerable level at which a reasonable person would feel compelled to resign her position).

Furthermore, the Court notes that Plaintiff's Response misstates Plaintiff's testimony regarding the incident on February 26, 1999, when Stewart denied Plaintiff permission to take an extra ten minutes over her lunch break so she could have her blood pressure checked. According to Plaintiff's testimony when she made her request Stewart brought her an annual leave form to fill out and she said "no" and ripped it up. Pla.'s Depo. at 161; Def.'s Ex. 13. Based on this undisputed evidence, Stewart did not outright deny Plaintiff's request for leave on this date, but rather presented Plaintiff with the requisite form she needed to fill out to seek leave. *Id.* at 164; Def.'s Ex. 14. Plaintiff cannot now claim that she was denied leave when she refused to follow the applicable procedures. In effect, Plaintiff is claiming that because she was denied an accommodation that she had neither earned nor was entitled to, that Stewart had made her working conditions

intolerable. Viewing the evidence in the light most favorable to Plaintiff, a reasonable juror could not conclude that Stewart's actions, including the denial of Plaintiff's request to take unearned leave time, would make a reasonable person feel compelled to resign. *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir.1997).

## CONCLUSION

In sum, Plaintiff has not presented sufficient evidence upon which a reasonable juror could conclude that she was disabled or that Defendant failed to provide her with a reasonable accommodation during the time periods when she claims she suffered from depression. Additionally, Plaintiff has not established that her resignation was caused by disability-based discrimination. In this regard, Plaintiff has not produced sufficient evidence showing that she was subjected to severe and pervasive harassment while she was on medical leave, nor is there any evidence that Plaintiff was subjected to disparate treatment or an adverse employment action because of her disability. Finally, Plaintiff was not disabled when she returned to work in November 1998, and thus was not entitled to any accommodation or additional time off beyond what she had accrued. Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant's Motion is GRANTED.