Danyle Prichard **KIMSEY**, Plaintiff,

v.

Ricardo B. **AKSTEIN**, M.D., and **Akstein Eye Center, P.C.,** Defendant.

No. 104CV1001WSDCCH.

United States District Court, N.D. Georgia, Atlanta Division.

Dec. 30, 2005.

Bruce R. Millar, Millar Mixon and Hunt, Jonesboro, GA, William M. Ordway, Office of William M. Ordway, Atlanta, GA, for Plaintiff.

David W. Long–Daniels, Ernest L. Greer, Amanda S. Thompson, Greenberg Traurig, Atlanta, GA, for Defendants.

## ORDER

DUFFEY, District Judge.

This matter is before the Court on the Report and Recommendation issued by Magistrate Judge Hagy [78]. Because no objections to the Report and Recommendation have been filed, the Court must conduct a plain error review of the record. *United States v. Slay,* 714 F.2d 1093, 1095 (11th Cir.1983), *cert. denied,* 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984). After careful review, the Court finds no plain error in the Magistrate Judge's factual or legal conclusions.

Accordingly,

**IT IS HEREBY ORDERED** that the Court **ADOPTS AS ITS ORDER** the Magistrate Judge's Report and Recommendation. Defendants' Motion for Partial Summary Judgment [49] is **GRANTED IN PART** and **DENIED IN PART**. Defendants' motion is **GRANTED** as to (i) all Title VII claims against Dr. Akstein; (ii) Title VII claims for constructive discharge sexual harassment, constructive discharge gender discrimination and gender discrimination against Defendant Akstein Eye Center, P.C.; and (iii) state-law claims for intentional infliction of emotional distress and failure to maintain a safe working environment against both Defendants. Defendants' motion is **DENIED** with respect to Plaintiff's claim for hostile work environment against Defendant Akstein Eye Center, P.C. Accordingly, Counts I, II, IV, V and VI of Plaintiff's Complaint are **DISMISSED** as to both Defendants and Count III is **DISMISSED** as to Defendant Ricardo B. Akstein only.

**SO ORDERED.**

## REPORT AND RECOMMENDATION IN AN EMPLOYMENT DIS-CRIMINATION ACTION

HAGY, United States Magistrate Judge.

Plaintiff filed the above-styled civil action on April 13, 2004. She claims that Defendant discriminated against her on the basis of her sex and subjected her to sexual harassment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.* She also asserts state law claims of intentional infliction of emotional distress; failure to maintain a workplace free from unwanted misconduct, sexual harassment, and gen-

der discrimination; false imprisonment, and battery. Plaintiff seeks punitive damages for Defendants' allegedly willful conduct.

The action is presently before the Court on Defendants' Motion for Partial Summary Judgment ("Motion for Summary Judgment" or "MSJ") [49] [1] and on Defendants' Motion to Strike Portions of Plaintiff's Initial Disclosures and to Exclude Witnesses ("Motion to Strike") [52]. In their Motion for Summary Judgment, Defendants seek summary judgment on Plaintiff's Title VII claims (Counts I through IV of her Complaint ("Compl.")), Plaintiffs' state law claims for intentional infliction of emotional distress and failure to maintain a safe working environment claim (Counts V and VI of her Complaint), and Plaintiff's request for punitive damages asserted as to her Title VII claims. For the reasons discussed below, the undersigned **RECOMMENDS** that Defendant's Motion be **GRANTED IN PART AND DENIED IN PART**.

## I. *SUMMARY OF DECISION AND RECOMMENDATION*

Defendants seek summary judgment on Plaintiff's Title VII claims (Counts I–IV), including her request for punitive damages for those counts, as well as on her state law claims for intentional infliction of emotional distress (Count V) and for an unsafe work environment (Count VI). The Court finds that Defendant Ricardo Akstein, M.D. ("Dr. Akstein" or "Akstein"), as an individual, cannot be liable under Title VII, and that Plaintiff's Title VII claims (Counts I–IV) can be stated against only her employer, Akstein Eye Center, P.C. (the "Eye Center"). Accordingly, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED** on that ground and that all Title VII claims against Dr. Akstein be **DISMISSED**.

As for the claims remaining against the Eye Center, the Court finds that Plaintiff's allegations of sexual harassment which created a hostile work environment included an incident within six months prior to the filing of her July 29, 2003 EEOC charge, and therefore, all incidents of sexual harassment alleged, including those acts occurring more than 180 days before the EEOC charge, were timely raised in that charge. Accordingly, the Court **RECOMMENDS** that Defendants' Motion for

1. The Court advises Plaintiff that she has not complied with this Court's Local Rules with respect to the electronic filing of summary judgment motions and responses thereto. Appendix H to the Local Rules sets out the administrative procedures for filing, signing, and verifying pleadings by electronic means in civil cases. *See* App. H to Local Rules, NDGa. The procedures explicitly state that: "[u]nless otherwise specified, a paper courtesy copy of all summary judgment motions, to include exhibits, and any response to such motions is required to be filed with the assigned judge."

And, although this requirement had been inadvertently omitted from the Appendix, it was reinserted by April 27, 2005, and on that date, the Court's website prominently noted the procedure correction; this notation is still included on the Court's website. *See*

http://www.gand.uscourts.gov (last visited October 13, 2005). While Defendants' MSJ was filed prior to April 27, 2005, Plaintiff filed her response to Defendants' MSJ on May 26, 2005, along with ten exhibits [70–73], three of which were filed in multiple parts (Exs. 1, 2, and 4 [70–71, 73]). It is not the role of the Court to piece together the electronic portions of Plaintiff's Response, which includes hundreds of pages of deposition testimony and several affidavits in addition to her Brief.

Nevertheless, the Court will consider Plaintiff's Brief. The Court, however, **DIRECTS** the parties to comply with this Court's Local Rules, including the administrative procedures for electronic case filing. Any additional failure to comply with these procedures will result in sanctions, including the Court's refusal to consider such non-conforming pleadings.

Summary Judgment, insofar as it is based on out-of-time claims, be **DENIED**.

Next, the Court finds that a fact question exists as to whether the alleged sexual harassment perpetrated by Dr. Akstein against Plaintiff was severe or pervasive enough to have altered the terms and conditions of her employment at the Eye Center. Furthermore, regardless of whether Plaintiff availed herself of the procedures in place to report sexual harassment, the Court finds that the Eye Center can be held vicariously liable for the actions of its principal and alter ego, Dr. Akstein. Accordingly, the Court finds that Plaintiff's sexually hostile work environment claim (Count III) may stand, and **RECOMMENDS** that Defendants' Motion for Summary Judgment on this claim be **DENIED** and that this claim remain as to Defendant the Eye Center.

Notwithstanding this conclusion, the Court finds that Plaintiff has not presented a genuine issue of material fact in support of her claim that she was constructively discharged, and therefore, her constructive discharge sexual harassment claim (Count I) fails. For this reason, and because she has failed to point to similarly situated male employees treated more favorably than she was, her constructive discharge gender discrimination claim (Count II) also fails. Finally, Plaintiff's remaining Title VII claim, which she alleges is based on "gender discrimination without tangible employment action" (Count IV), fails for these reasons as well as because it is not a recognized cause of action. Accordingly, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment on Counts I, II, and IV be **GRANTED**, and that these claims be **DISMISSED** against both Defendants.

As to that portion of Defendants' motion seeking a ruling on Plaintiff's request for punitive damages under Title VII, the Court finds that, because her sexually hostile work environment claim stands, and because of fact issues as to intent, the Court should not determine whether punitive damages are warranted at this time.

As for Plaintiff's state law claims, Defendant has moved for summary judgment on Plaintiff's intentional infliction of emotional distress claim (Count V) and on her unsafe workplace claim (Count VI). The Court finds that the actions as alleged against Defendants are not sufficiently outrageous to satisfy the standards of intentional infliction of emotional distress under Georgia law, and therefore, this claim fails. In addition, the Court finds that Plaintiff cannot state a claim for an unsafe workplace for allegations amounting to emotional distress, and therefore, that this claim fails as well. Accordingly, the Court **RECOMMENDS** that Counts V and VI of Plaintiff's Complaint be **DISMISSED** against both Defendants.

## II. *BACKGROUND FACTS*

■ Unless otherwise indicated, the Court draws the undisputed facts from Defendants' Separate "Statement of Material Undisputed Facts" ("SMF"). Plaintiff has filed a response to Defendants' SMF, in which she denies SMF ¶¶ 6–10, 18–19, 22–24, 26, 31, 32, 41, 44, 47, 52, 54, 59, and 61–64. Plaintiff, however, has not cited to any evidence in the record controverting Defendants' material facts. According to Local Rule 56.1B.(2)(a)(2), "[t]his Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's facts with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise

has failed to comply with the provisions set out in LR 56.1B.(1)." LR 56.1B.(2)(a)(2), NDGa.

Instead, Plaintiff has included a discussion of the facts in her Brief, which apparently is intended to dispute portions of Defendants' facts. *See* Plaintiff's Memorandum in Support of her Response to MSJ ("Pl.'s Br.") at 4–13. Local Rule 56.1B.(2)(a)(1), however, states specifically that a "response shall contain individually numbered, concise, non argumentative responses corresponding to each of the movant's numbered undisputed material facts." LR 56.1B.(2)(a)(1), NDGa. Further, this response must be in a separate document filed *"with* the responsive brief." LR 56.1.B(2), NDGa (emphasis added).

Even if the Court were to construe Plaintiff's discussion of the facts in her Brief as responses to Defendants' material facts, Plaintiff has still failed to respond to many of Defendants' material facts in that discussion, and it is difficult for the Court to discern which facts Plaintiff controverts and, as a result, which facts are in genuine dispute.

Finally, the Court notes that Plaintiff has repeatedly mis-cited the record in the statement of facts in her Brief, either to put a more favorable "spin" on the evidence, or out of carelessness. For example, on pages 7 and 8 of her Brief, Plaintiff alleges that "[w]hen Mrs. Kimsey complained to supervisor Linda Bunch about Akstein's sexual misconduct toward her, Bunch told Danyle that she wasn't woman enough to work in the work force, and maybe that's what's wrong, and told her not to be left alone with Dr. Akstein." In support of this statement, Plaintiff cites to page 178 of Bunch's deposition and to page 66 of Liz Adams's Deposition. There is no page 178 to Bunch's deposition. Nor has the Court found Bunch's alleged statement that Plaintiff was not "woman enough to work in the work force" on page 66 or elsewhere in Liz Adams's deposition.[2] *See* Deposition of Liz Adams ("Adams Dep.") [65] at 66.[3]

Based on Plaintiff's failure to observe the Local Rules, by failing to directly controvert any of Defendants' facts in her response to Defendants' SMF, and based on the repeated indicia that the statement of the facts Plaintiff has given in her Brief is not reliable, the Court gives the arguments advanced in Plaintiff's statement of the facts in her Brief no weight in making its recommendation. Nonetheless, the Court views all facts in the light most favorable to Plaintiff, as required on a

---

**2.** In fact, on page 26 of Liz Adams's deposition transcript, Ms. Adams denies hearing Bunch tell Plaintiff that she was not woman enough to work in the work force, although she states that Plaintiff *"may* have told [her] that." Deposition of Liz Adams ("Adams Dep.") [65] at 26.

**3.** In addition, the Court notes that Plaintiff has inappropriately used certain portions of the transcripts in her discussion of them in her Brief. For example, on page 5 of her Brief, she states that "in November 2002, he asked her into his office, locked the door, and pulled her into his lap … He grabbed her arms and pulled her down, saying 'it's OK, no one will know.' " (citing Deposition of Patricia Danyle Kimsey ("Kimsey Dep."), attached

as Ex. 1 to Defendants' Motion for Summary Judgment, and as Ex. 1 to Plaintiff's Response to Defendants' Motion for Summary Judgment at 90–91, 93–94). Plaintiff, however, also states that, during this incident, Dr. Akstein "grabbed her breasts." Pl.'s Br. at 5. In support of this statement, she cites to page 282 of her Deposition. Page 282 discusses a completely different incident, which Plaintiff specifically states on the same page was before the November 2002 incident. Kimsey Dep. at 282. In the incident that occurred in November of 2002, discussed in pages 90–92 of her deposition, Plaintiff made no reference to Dr. Akstein succeeding in, or even attempting to, touch her breasts. Kimsey Dep. at 90–94.

defendant's motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *McCabe v. Sharrett*, 12 F.3d 1558, 1560 (11th Cir. 1994); *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 469 (11th Cir.1993). In addition, where necessary, the Court has supplemented its statement of the facts with citations to the record.

Defendant the Eye Center is an ophthalmology practice in Riverdale, Georgia, in which Defendant Dr. Richard Akstein ("Akstein" or "Dr. Akstein") engages in the ophthalmic care of his patients. SMF ¶ 1; Deposition of Ricardo B. Akstein, M.D. ("Akstein Dep.") [63] at 31–32. Dr. Akstein is the President and Chief Executive Officer ("CEO") of the Eye Center. Compl. ¶ 5; Answer [5] ¶ 5; Amended Answer [6] ¶ 5; Akstein Dep. at 38, 47–48, 103, 237. Plaintiff began her employment with the Eye Center on September 29, 2002, and worked there until she resigned six months later, on or about March 23, 2003. SMF ¶ 2; Deposition of Danyle Patricia Kimsey ("Kimsey Dep."), attached as Ex. 1 to Defendants' Motion for Summary Judgment and Ex. 1 to Plaintiff's Response to Defendants' Motion for Summary Judgment at 279; Compl. ¶ 8.

Plaintiff's initial position with the Eye Center was as a technician. SMF ¶ 3; Kimsey Dep. at 42–43. Linda Bunch, the Office Administrator at the Eye Center, was one of Plaintiff's supervisors. SMF ¶ 4; Kimsey Dep. at 44. Around Christmas of 2002, Plaintiff became an optician, and while she was in that position, Bunch was her direct supervisor. SMF ¶ 5; Kimsey Dep. at 45. It is undisputed that there were no male technicians or opticians at the Eye Center. SMF ¶¶ 55–56; Kimsey Dep. at 291.

At all relevant times, the Eye Center has maintained an employee handbook that contains an anti-discrimination policy and an anti-harassment policy. SMF ¶ 6; Deposition of Linda Bunch ("Bunch Dep.") [64] at 125; Deposition of Liz Adams ("Adams Dep.") [65] at 85–86; Declaration of Spring Register ("Register Aff."), attached as Ex. 6 to MSJ ¶¶ 6–8; Declaration of Juanita Carmichael ("Carmichael Aff."), attached as Ex. 7 to MSJ ¶¶ 4–8; Declaration of Kim Fowler ("Fowler Aff."), attached as Ex. 8 to MSJ ¶ 5–6; Declaration of Romaine Miller ("Miller Aff."), attached as Ex. 9 to MSJ ¶ 6; Declaration of Leigh East ("East Aff."), attached as Ex. 10 to MSJ ¶¶ 5–6; Declaration of Christina Lopes ("Lopes Aff."), attached as Ex. 11 to MSJ ¶ 4; Declaration of Tara Johnson ("Johnson Aff."), attached as Ex. 12 to MSJ ¶¶ 5–6; Declaration of Janai Hill ("Hill Aff."), attached as Ex. 13 to MSJ ¶ 5–6. During all times relevant to the Complaint, the Eye Center also displayed a poster on sexual harassment in the office. SMF ¶ 7 Akstein Dep. at 267; Defs.' Ex. 1 to Akstein Dep. This poster states:

> Because of the importance we place on these types of issues, this company has instituted a procedure for investigating harassment complaints. It is our policy to investigate and resolve these issues in a prompt manner. If you have been harassed or another's conduct creates an intimidating, hostile, or offensive work environment, please notify one of the people listed below immediately.

SMF ¶ 8; Akstein Dep. at 268; Defs.' Ex. 1 to Akstein Dep.

The anti-harassment policy in the employee handbook states:

> The practice is committed to providing a work environment free of discrimination. This policy prohibits harassment in any form, including verbal, physical and sexual harassment. Any employee who believes he or she has been harassed by a coworker, manager or agent of the practice is to immediately report any such

incident to the Administrator or next higher authority. We will investigate and take appropriate action.

SMF ¶ 9 (Akstein Dep. at 269); Pl.'s Ex. 1 to Akstein Dep. at 2.

According to Defendants, Plaintiff attended and signed an attendance roster at an employee meeting in January of 2003, in which the anti-harassment policy was discussed, Bunch answered questions about harassment, and Bunch reiterated that employees could come to her at any time to report harassment. SMF ¶ 10; Bunch Dep. at 125, 128.

Plaintiff alleges that, despite the company's anti-harassment policy, she was subjected to several instances of inappropriate sexual conduct (physical and non-physical) by Dr. Akstein. Plaintiff alleges generally that Akstein would give her hugs, either while standing by her side or from her back. SMF ¶ 11; Kimsey Dep. at 88–89. When Akstein hugged Plaintiff from the side, he would rub her shoulder or would put his hand around her waist; when he hugged her from her back, he would touch or rub her shoulders. SMF ¶ 12; Kimsey Dep. at 89, 127–28. Plaintiff alleges that when Dr. Akstein would stand at her side, he would sometimes smell her hair. SMF ¶ 13; Kimsey Dep. at 88. Plaintiff also alleges that, on a weekly basis, Dr. Akstein would approach her, put his hand on her waist, and rub her face, and that he would rub her back, trying to get under her shirt to touch her skin. SMF ¶¶ 14, 17; Kimsey Dep. at 101, 135. Dr. Akstein also would make certain comments to Plaintiff, such as, "this is sexy on her today", and "[y]ou're so beautiful," but she admits that this latter comment was not necessarily sexual. SMF ¶¶ 15, 16; Kimsey Dep. at 101, 131. Plaintiff did not report any of this general behavior until the week before she resigned in March of 2003. SMF ¶ 18; Kimsey Dep. at 288–89.

In addition to the general inappropriate conduct on the part of Dr. Akstein, there were five "major" incidents of alleged harassment by Dr. Akstein toward Plaintiff while she was employed with the Eye Center. SMF ¶ 19; Kimsey Dep. at 124, 280–84. The first incident took place at the beginning of Plaintiff's employment with the Eye Center. SMF ¶ 20; Kimsey Dep. at 280. During that incident, Dr. Akstein invited her to go with him to a conference in Florida and to stay in a hotel room with him. SMF ¶ 21; Kimsey Dep. at 125, 179, 280. Plaintiff admits that she did not complain about this incident to anyone, and, although she discussed the incident with one of her supervisors, she did not consider the discussion to be a report of sexual harassment. SMF ¶ 22; Kimsey Dep. at 179–80.

The second incident occurred sometime before or in the early part of November of 2002. SMF ¶ 23; Kimsey Dep. at 281–82. On that occasion, Dr. Akstein pulled Plaintiff into his office and told her to lock the door, although Plaintiff did not lock the door. SMF ¶ 24; Kimsey Dep. at 280–81; Compl. ¶ 12. Dr. Akstein then put his hand up Plaintiff's shirt and touched her just underneath of her bra; she pushed his hands down. SMF ¶ 25; Kimsey Dep. at 281–83. Plaintiff did not report this incident. SMF ¶ 26; Kimsey Dep. at 288.

The third incident occurred in November of 2002, on Plaintiff's birthday. On that day, Dr. Akstein asked Plaintiff to come to his office before she went home. SMF ¶ 27; Kimsey Dep. at 90. After Plaintiff came to his office, Dr. Akstein locked the door and sat down in a chair. SMF ¶ 28; Kimsey Dep. at 92. Although, at that point, Plaintiff could have gone to the door and left the room, she stayed in Dr. Akstein's office. SMF ¶ 29; Kimsey Dep. at 94. Akstein told Plaintiff that he wanted to do something special for her birthday and then pulled her into his lap.

SMF ¶ 30; Kimsey Dep. at 91–94. Plaintiff jumped up, unlocked the door, and walked out of the room. SMF ¶ 31; Kimsey Dep. at 94–95. Plaintiff did not report this incident to anyone. SMF ¶ 32; Kimsey Dep. at 98.

The fourth incident, right before Christmas of 2002, occurred just after Plaintiff was promoted to the position of optician for the Eye Center. SMF ¶ 33; Kimsey Dep. at 102–03. On the day in question, a Saturday, Plaintiff went to the office. SMF ¶ 33; Kimsey Dep. at 103. When Plaintiff arrived at the office, Dr. Akstein was there turning off the alarm. SMF ¶ 34; Kimsey Dep. at 110. Dr. Akstein walked up to Plaintiff and asked her how long she would be at the office that day. SMF ¶ 35; Kimsey Dep. at 113. Plaintiff replied that she would be there only an hour or two, to which Dr. Akstein responded, "You're so beautiful when you talk." SMF ¶ 36; Kimsey. Dep. at 113. Dr. Akstein then pulled Plaintiff toward him, pulled her tight, and stated, "Come on. Come on. No big deal. No one can see. No one can see." SMF ¶ 37; Kimsey Dep. at 114–15. Plaintiff walked toward the optical section of the office and sat on a bench in the customer service area. SMF ¶ 38; Kimsey Dep. at 105, 115. Dr. Akstein then laid down on the bench, put his head in Plaintiff's lap, and said, "Please rub my head." SMF ¶ 39; Kimsey Dep. at 105–07. Plaintiff pushed Dr. Akstein off of her, stating, "Get your nappy head out of my lap." SMF ¶ 40; Kimsey Dep. at 105, 107. Plaintiff did not report this incident to anyone. SMF ¶ 41; Kimsey Dep. at 288.

The final incident occurred on or about March 7, 2003, the last Friday Plaintiff worked at the Eye Center. SMF ¶ 42; Kimsey Dep. at 65, 67. On that date, Dr. Akstein approached Plaintiff and asked her if she was mad at him. SMF ¶ 42; Kimsey Dep. at 62–63. Plaintiff was standing in the optical lab near a lens edger and Dr. Akstein approached to within an arm's length away from her. SMF ¶ 43; Kimsey Dep. at 66–68. Dr. Akstein then put his hand on Plaintiff's face, which Plaintiff described as kind, gentle, and affectionate, SMF ¶ 44; Kimsey Dep. at 72–73, and said to her, "[y]ou're so beautiful. I can't keep my hands off you." SMF ¶ 45; Kimsey Dep. at 73. He also stated that this .was the manner in which Latin men treated women, and he took his hand from her face down to her left breast. SMF ¶¶ 46–47; Kimsey Dep. at 73–74, 77. Plaintiff pushed Dr. Akstein away and stated, "Dr. Akstein." SMF ¶ 48; Kimsey Dep. at 74. Dr. Akstein finally walked out of the room. SMF ¶ 49; Kimsey Dep. at 76. Another employee then entered the room and asked Plaintiff what was wrong, to which Plaintiff responded, "He is just in one of his moods." SMF ¶ 50 Kimsey Dep. at 75, 77.

Despite the incidents Plaintiff endured while at the Eye Center, she wrote a letter to Bunch in or around January of 2003, stating "I am proud to be an employee. You're the best and wonderful. We forget how well you do your job ... Thanks for everything." SMF ¶ 51; Kimsey Dep. at 228–29. Furthermore, Plaintiff did not report the allegedly harassing behavior to any of her supervisors until, at the earliest, the first week of March. SMF ¶ 52; Kimsey Dep. at 230, 288. At that time, she talked about the behavior to Bunch. SMF ¶ 53; Kimsey Dep. at 177–78, 230. This was her first conversation with Bunch about the major encounters with Dr. Akstein, with the exception of the invitation to Florida, which Plaintiff admitted that she took out of context. *See* Kimsey Dep. at 47–48.

March 7, 2003 was the last day that Plaintiff worked at the Eye Center. SMF ¶ 54; Kimsey Dep. at 231–33. On or about March 10, 2003, Plaintiff sought medical

treatment for stomach pains. SMF ¶ 57; Kimsey Dep. at 48–50. Plaintiff's doctor gave her a medical excuse from work and she never returned. Plaintiff visited an attorney and drafted a letter of resignation dated March 23, 2003, stating that she was resigning and that she had been sexually harassed by Dr. Akstein. SMF ¶¶ 54, 58, 59; Kimsey Dep. at 48, 201–04, 201–08, 215, 232–33; Akstein Dep. at 205–06.[4]

Plaintiff admitted in her deposition that she did not know whether Bunch conducted an investigation based upon her complaint of sexual harassment in March of 2003. SMF ¶ 60; Kimsey Dep. at 299–300. According to Defendants, Bunch asked Dr. Akstein extensive, direct questions about the allegations, as contained in Plaintiff's resignation letter; Bunch also spoke to the employees who worked with Plaintiff. SMF ¶ 60; Bunch Dep. at 75–76, 79. Defendants also contend that Bunch attempted to call Plaintiff to question her about the allegations, but that Plaintiff would not return Bunch's telephone calls. SMF ¶ 60 (Bunch Dep. at 76). According to Defendants, Bunch's investigation did not lead to the conclusion that Dr. Akstein had engaged in harassing behavior, and, they allege that the employees with whom Bunch spoke about Plaintiff's allegations stated that they had not witnessed such behavior and that Plaintiff had not complained to them about it. SMF ¶ 63; Bunch Dep. at 76, 79–80.

On July 29, 2003, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC")

alleging that Dr. Akstein had sexually harassed her. SMF ¶ 64; Kimsey Dep. at 153–54; Pl.'s Ex. 4 to Akstein Dep. at AKS00009. It is undisputed that Plaintiff received a right to sue notice from the EEOC in response to her EEOC charge, and that she timely filed this action within ninety (90) days thereafter.

Because many of the Court's findings of fact are intertwined with its analysis of whether the parties have met their respective evidentiary burdens, the remaining relevant facts are set forth in the Discussion below.

## III. DISCUSSION

### A. EVIDENTIARY ISSUES

In their Motion to Strike [52], Defendants seek to strike certain supplementary portions of Plaintiff's Initial Disclosures, and to strike affidavits and testimony of several witnesses disclosed in the most recent supplement thereto. According to Defendants, Plaintiff's Initial Disclosures (Ex. 1 to Motion to Strike) purported to reveal all documents and data in her custody and control that may have been used to support her claims. See Memorandum in Support of Motion to Strike at 2. On March 18, 2005, however, over one month after discovery ended on February 10, 2005 (See Order Granting Discovery Extension in Part [35]), Plaintiff supplemented her Initial Disclosures to include eleven additional witnesses not included in her initial filing. See Exs. A and C to Motion to Strike; Defendants' Memorandum in Support of Motion to Strike at 2–3. Plain-

---

4. According to the transcript of Dr. Akstein's deposition, Plaintiff's resignation letter was to be Ex. 11 to that deposition. Akstein Dep. at 205–06. Exhibit 11, however, appears to have been omitted from the exhibits included with the original transcript of Dr. Akstein's deposition filed by Plaintiff [63]. And, although Plaintiff electronically filed a complete transcript of her own deposition as Ex. 1 to her Response to Defendants' MSJ [70], she

did not attach any of the corresponding exhibits, which the Court presumes would have included Plaintiff's resignation letter.

In addition, while both parties submitted portions of Dr. Akstein's deposition as exhibits to their Briefs (Ex. 4 to Defendants' MSJ; Ex. 4 to Plaintiff's Response to Defendants' MSJ), neither party attached any of the corresponding exhibits.

tiff also included the declarations of nine of those witnesses. Defendants seek to exclude ten of these witnesses from testifying and to strike all related affidavits.[5]

The Court has determined that, under the Local Rules, it cannot consider Plaintiff's Statement of Facts as laid out in her Brief, and it has already found that Defendants' entire SMF is deemed admitted by Plaintiff because she has failed to respond adequately to each fact. *See* Discussion *supra* at 6–9. Thus, to the extent that Plaintiff relies on these affidavits in her discussion of the facts, the Court will not consider them. With respect to their use in other portions of Plaintiff's Brief, the Court notes that Plaintiff has filed to cite to the affidavits in her argument section. Furthermore, the Court concludes that much of the testimony to which Defendants have objected is immaterial either to Plaintiff's claims or to Defendants' defenses, and therefore, the Court declines to discuss Defendants' objections. Accordingly, Defendants' Motion to Strike is **DENIED** without prejudice. The Motion may be refiled at a later time, however, if this case proceeds to trial. Defendants are advised, however, that they now have notice of these potential witnesses and this case is months from trial. Accordingly, while discovery is closed, if Plaintiff is willing to make these witnesses available for deposition or does not oppose a subpoena seeking their testimony, a court might allow them to be listed in the Pre–Trial Order and to be called at trial.

### B. *DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

### 1. *SUMMARY JUDGMENT STANDARD*

Summary judgment is authorized when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 175, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Bingham, Ltd. v. United States,* 724 F.2d 921, 924 (11th Cir.1984). The movant carries this burden by showing the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making its determination, the court must view the evidence and all factual inferences in the light most favorable to the nonmoving party.

Once the moving party has adequately supported its motion, the nonmoving party must come forward with specific facts that demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party is required "to go beyond the pleadings" and to present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Generally, "[t]he mere existence of a scintilla of evidence" supporting the nonmoving party's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When considering motions for summary judgment, the court does not make deci-

---

**5.** Defendants concede that Johnnie Watson had been previously identified in Plaintiff's response to Defendants' Interrogatories. *See* Defendants' Reply in Further Support of its Motion to Strike at FN 1.

sions as to the merits of disputed factual issues. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505; *Ryder Int'l Corp. v. First American Nat'l Bank,* 943 F.2d 1521, 1523 (11th Cir.1991). Rather, the court only determines whether there are genuine issues of material fact to be tried. Applicable substantive law identifies those facts that are material and those that are irrelevant. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputed facts that do not resolve or affect the outcome of a suit will not properly preclude the entry of summary judgment. *Id.*

If a fact is found to be material, the court must also consider the genuineness of the alleged factual dispute. *Id.* An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id.* at 250, 106 S.Ct. 2505. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 242, 106 S.Ct. 2505. Moreover, for factual issues to be genuine, they must have a real basis in the record. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. 1348. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587, 106 S.Ct. 1348 (quoting *First Nat'l Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). Thus, the standard for summary judgment mirrors that for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 259, 106 S.Ct. 2505.

### 2. STANDARDS OF PROOF IN TITLE VII CLAIMS

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To prevail on a Title VII claim, a plaintiff must prove that the defendant acted with discriminatory intent. *Hawkins v. Ceco Corp.,* 883 F.2d 977, 980–981 (11th Cir.1989); *Clark v. Huntsville City Bd. of Educ.,* 717 F.2d 525, 529 (11th Cir.1983). Such discriminatory intent may be established either by direct evidence or by circumstantial evidence meeting the four-pronged test set out for Title VII cases in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Holifield v. Reno,* 115 F.3d 1555, 1561–62 (11th Cir. 1997); *Nix v. WLCY Radio/Rahall Comm.,* 738 F.2d 1181, 1184 (11th Cir. 1984).

Direct evidence is defined as evidence "that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." Black's Law Dictionary 596 (8th ed.2004); *see also Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1226 (11th Cir.1993); *Carter v. City of Miami,* 870 F.2d 578, 581–82 (11th Cir.1989); *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528, n. 6 (11th Cir.1987). Only the most blatant remarks whose intent could only be to discriminate constitute direct evidence. *Clark,* 990 F.2d at 1226; *Carter,* 870 F.2d at 581. Evidence that only suggests discrimination, *see Earley v. Champion Intern. Corp.,* 907 F.2d 1077, 1081–82 (11th Cir.1990), or that is subject to more than one interpretation, *see Harris v. Shelby County Bd. of Educ.,* 99 F.3d 1078, 1083, n. 2 (11th Cir.1996), does not

constitute direct evidence. "[D]irect evidence relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Caban–Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir.1990); *see also Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641–42 (11th Cir. 1998).

Evidence that merely "suggests discrimination, leaving the trier of fact to infer discrimination based on the evidence" is, by definition, circumstantial. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081–82 (11th Cir.1990). When relying on circumstantial evidence, a plaintiff is first required to create an inference of discriminatory intent, and thus carries the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *see also Jones v. Bessemer Carraway Medical Ctr.*, 137 F.3d 1306, 1310, *reh'g denied and opinion superseded in part*, 151 F.3d 1321 (11th Cir.1998); *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527 (11th Cir.1997).

Demonstrating a *prima facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination. *Jones*, 137 F.3d at 1310–1311; *Holifield*, 115 F.3d at 1562 (citations omitted); *see Burdine*, 450 U.S. at 253–54, 101 S.Ct. 1089. Once the plaintiff establishes a *prima facie* case, the defendant must "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Jones*, 137 F.3d at 1310. This burden is "exceedingly light" in comparison to the burden required if the plaintiff has presented direct evidence of discrimination. *Smith v. Horner*, 839 F.2d 1530, 1537 (11th Cir.1988). If the defendant is able to carry this burden and explain its rationale, the plaintiff, in order to prevail, must then show that the proffered reason is merely a pretext for discrimination. *See Burdine*, 450 U.S. at 253–54, 101 S.Ct. 1089; *Perryman v. Johnson Products Co.*, 698 F.2d 1138, 1142 (11th Cir.1983).

A plaintiff is entitled to survive a defendant's motion for summary judgment if there is sufficient evidence to demonstrate the existence of a genuine issue of material fact regarding the truth of the employer's proffered reasons for its actions. *Combs*, 106 F.3d at 1529. A *prima facie* case along with sufficient evidence to reject the employer's explanation is all that is needed to permit a finding of intentional discrimination. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Combs*, 106 F.3d at 1529.

This *McDonnell Douglas-Burdine* proof structure "was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *see also Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 594 (11th Cir.1987). The Eleventh Circuit has held that this framework of shifting burdens of proof is a valuable tool for analyzing evidence in cases involving alleged disparate treatment, but the framework is only a tool. *Nix v. WLCY Radio/Rahall Comm.*, 738 F.2d 1181, 1184 (11th Cir.1984). The "ultimate question" is not whether a plaintiff has established a *prima facie* case or demonstrated pretext, but "whether the defendant intentionally discriminated against the plaintiff." *Id.*, 738 F.2d at 1184 (quoting *Aikens*, 460 U.S. at 713–14, 103 S.Ct. 1478); *see also Jones*, 137 F.3d at 1313.

The plaintiff retains the ultimate burden of proving that the defendant is guilty of intentional discrimination. *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089.

### 3. PLAINTIFF'S TITLE VII CLAIMS

#### a. Dr. Akstein's Liability

■ Plaintiff has asserted claims under Title VII against both Defendant Akstein and the Eye Center, without specifying which Defendant she alleges is liable on which Counts. The Eleventh Circuit has held that "[t]he relief granted under Title VII is against the employer, not the individual employees whose actions would constitute a violation of the Act." *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991); *accord Mason v. Stallings,* 82 F.3d 1007, 1009 (11th Cir.1996); *Cross v. State of Alabama,* 49 F.3d 1490, 1504 (11th Cir.1995). Therefore, Plaintiff may only assert a valid claim under Title VII against her actual employer, which, on the basis of the Complaint, appears to have been at all relevant times Defendant the Eye Center, not Defendant Akstein in his individual capacity. The Court finds, therefore, that Plaintiff's Title VII claims against Defendant Akstein in his individual capacity should be dismissed. Accordingly, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment, insofar as it is based on Akstein's liability under Title VII, be **GRANTED**, and that Counts I through IV of Plaintiff's Complaint be **DISMISSED** as to Defendant Ricardo Akstein, M.D.

#### b. Timeliness of Plaintiff's EEOC Charge

■ Title VII requires that an employee aggrieved by discriminatory acts file a charge of discrimination with the EEOC within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e). Plaintiff filed her charge of discrimination with the EEOC on July 29, 2003; therefore, she normally could only recover for discrete acts of discrimination that occurred on or after January 30, 2003. *See Beavers v. American Cast Iron Pipe Co.,* 975 F.2d 792, 796 (11th Cir.1992).

The date of the last incident of harassment was on her last day of work, March 7, 2003, less than 180 days prior to the filing of her Complaint; thus, her claims based on the events of this date and on her resignation are indisputably timely. *See* Background Facts *supra* at 16–19.

Four incidents of alleged harassment, however, occurred prior to January 30, 2003, and Defendant argues that these incidents are time barred and cannot be considered as part of Plaintiff's sexual harassment claim. *See* Memorandum in Support of MSJ ("Defs.' Br.") at 13–14. The Supreme Court, however, has addressed this issue and reached a different conclusion. In *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the Court concluded that:

> [i]n order for the charge to be timely, the employee need only file a charge within 180 … days of any act that is part of the hostile work environment.

*Id.* at 118, 122 S.Ct. 2061. In reaching this result, the Court determined that separate incidents of harassment are all part of one single unlawful employment practice. *Id.*

> It is precisely because the entire hostile work environment encompasses a single unlawful employment practice that we do not hold, as have some of the Circuits, that the plaintiff may not base a suit on individual acts that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on such conduct. The statute does not separate individual acts that are part of the hostile environment claim from the

whole for the purposes of timely filing and liability.

*Id.* at 117, 122 S.Ct. 2061.

Based on this ruling, the Court concludes that, because Plaintiff's EEOC charge was filed within 180 days of the last date of an alleged act of continuing harassment, the charge was timely filed as to all of Plaintiff's allegations of harassment. Accordingly, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment on Plaintiffs' Title VII claims (Counts I through IV of her Complaint), insofar as it is based on the timeliness of the claims in Plaintiff's EEOC charge, be **DENIED**.

c. *Plaintiff's Sexual Harassment Claims Against the Eye Center: Counts I and III*

In Counts I and III of her Complaint, Plaintiff alleges that she was sexually harassed by Dr. Akstein. *See* Compl. ¶¶ 18–35.[6] A plaintiff may establish a violation of Title VII by proving that she was harassed on the basis of her sex and that such harassment affected a condition of her employment. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Henson v. City of Dundee,* 682 F.2d 897, 902–904 (11th Cir.1982). As the United States Supreme Court has stated:

> [T]he language of Title VII is not limited to "economic" or "tangible" discrimination. The phrase "terms, conditions, or privileges of employment" evinces a congressional intent to " 'strike at the entire

spectrum of disparate treatment of men and women' " in employment.

*Meritor Savings Bank,* 477 U.S. at 64, 106 S.Ct. 2399 (citations omitted). Thus, Title VII grants employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult. *Id.* at 65, 106 S.Ct. 2399.

Sexual harassment may violate Title VII when the harassment: (1) involves the conditioning of concrete employment benefits on sexual favors (*i.e.,* what has been traditionally called *quid pro quo* sexual harassment); or (2) creates a hostile or offensive working environment, even if not affecting economic benefits. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Burlington Industries v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Meritor Savings Bank v. Vinson,* 477 U.S. at 62, 106 S.Ct. 2399.

In this case, Plaintiff claims that Dr. Akstein sexually harassed her; specifically, both that an adverse employment action was taken against her for failure to succumb to his sexual advances (*i.e. quid pro quo* harassment—Count I of her Complaint), and that Dr. Akstein created a hostile work environment as a result of his harassment (Count III of her Complaint). Compl. ¶¶ 28–35. Although the terms *"quid pro quo"* and "hostile environment" continue to be used in some instances, their usefulness is diminishing since the Supreme Court's decisions in *Burlington Indus., Inc., v. Ellerth,* 524 U.S. 742, 118

**6.** In her Complaint, Plaintiff actually states her claims as follows: "First and Second Causes of Action: Sexual Harassment and Gender Discrimination with Tangible Employment Action," *see* Compl. ¶¶ 18–35, and "Third and Fourth Causes of Action: Sexual Harassment and Gender Discrimination without Tangible Employment Action," *see* Compl. ¶¶ 36–40. The Court deduces that Plaintiff intends Count I to allege sexual harassment

*with* tangible employment action (*i.e. quid pro quo* sexual harassment); Count II to allege gender discrimination *with* tangible employment action (*i.e.* constructive discharge); Count III to allege sexual harassment *without* tangible employment action (*i.e.* hostile work environment sexual harassment), and Count IV to allege gender discrimination *without* tangible employment action.

S.Ct. 2257, 141 L.Ed.2d 633 (1998), and *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). In these rulings, the Supreme Court erased the former distinction that the employer was vicariously liable for all *quid pro quo* harassment by its managers, while employer liability in a hostile environment claim required proof of actual or constructive knowledge. Rather, the Court held, the meaningful distinction was whether the harassment culminated in a tangible employment action by a supervisor. If so, the employer would be vicariously liable. If not, the employer still could be held liable, but would have the opportunity to raise an affirmative defense by showing that: (a) the employer exercised reasonable care to prevent the harassment and took prompt corrective action once the harassment was reported, and (b) the employee unreasonably failed to take advantage of these safeguards. *Burlington,* 524 U.S. at 765, 118 S.Ct. 2257.[7]

Plaintiff does not allege that she was terminated or disciplined in any way, or that she was subjected to any pecuniary adverse action, but instead alleges that the adverse employment action taken against her was a constructive discharge,[8] which itself is based on the allegedly harassing behavior of Dr. Akstein. As a result, the distinction between *quid pro quo* harassment and hostile work environment harassment is even further diminished in Plaintiff's case. *See* Compl. ¶¶ 26–28.

In order to establish a *prima facie* case for a Title VII claim against an employer for a hostile work environment based on sexual harassment, a plaintiff must show that: (1) she belongs to a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment, and (5) there is a basis for holding the employer liable for the harassment either directly or indirectly. *Henson v. City of Dundee,* 682 F.2d 897, 903–905 (11th Cir.1982); *see also Cross v. Alabama,* 49 F.3d 1490, 1504 (11th Cir.1995); *Huddleston v. Roger Dean Chevrolet, Inc.,* 845 F.2d 900, 904 (11th Cir.1988); *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1557 (11th Cir.1987).

The Eye Center does not dispute that Plaintiff has presented sufficient evidence to establish the first three elements of a *prima facie* claim of sexual harassment, whether in the context of a *quid pro quo* claim or a hostile work environment claim. *See* Defs.' Br. at 15–16. Instead, the Eye Center argues that Plaintiff has failed to show either that the incidents about which she complains were severe or pervasive enough to alter a term or condition of her employment, or that, even if the alleged harassment could be considered severe or pervasive, Defendant the Eye Center, as Plaintiff's employer, cannot be held liable for the actions of Dr. Akstein. In addition,

---

7. *See also Johnson v. Booker T. Washington Broadcasting Svc., Inc., d/b/a Wenn Radio,* No. 99–6078, 2000 WL 1752177 (11th Cir. Nov.29, 2000) at *9 n. 7 (same analysis applies to sexual harassment claim regardless of whether Plaintiff terms it *"quid pro quo"* or "hostile environment").

8. While not an independent claim under Title VII, the Eleventh Circuit has "long recognized that constructive discharge can qualify as an adverse employment decision" for pur-

poses of discrimination claims. *Hipp v. Liberty National Life Ins. Co.,* 252 F.3d 1208, 1230 (11th Cir.2001), *cert. denied,* 534 U.S. 1127, 122 S.Ct. 1064, 151 L.Ed.2d 968 (2002). The parties appear, however, to address Plaintiff's allegations of constructive discharge as a separate cause of action. *See, e.g.,* Compl., Counts I–II. This Court is not aware of, and the parties have not presented, any authority suggesting that constructive discharge is a separate cause of action under federal law.

the Eye Center alleges that Plaintiff was not constructively discharged.

### (1) Severe or Pervasive Conduct

■ In order to establish a *prima facie* case of sexual harassment based on a hostile work environment, Plaintiff must show that her work environment was "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To determine whether a hostile environment is severe or pervasive enough to be actionable under Title VII, the "totality of the circumstances" must be considered; a court must consider not only the frequency of the incidents alleged but also the gravity of those incidents. *Harris*, 510 U.S. at 23, 114 S.Ct. 367; *Vance v. Southern Bell Tel. & Tel. Co.*, 863 F.2d 1503, 1511 (11th Cir.1989). Other factors that are relevant are whether the offensive conduct is physically intimidating or humiliating, and whether it unreasonably interferes with plaintiff's work performance. *Harris*, 510 U.S. at 23, 114 S.Ct. 367.

Plaintiff alleges generally that Dr. Akstein frequently would: give her unwelcome hugs; rub her shoulder or put his hand around her waist; stand at her side and smell her hair; put his hand on her waist and rub her face; make comments like "this is sexy on her today," or "[y]ou're so beautiful" (although she admits that this comment was not necessarily sexual), and rub her back, trying to get under her shirt to touch her skin. *See* Background Facts *supra* at 12–13.

Plaintiff also alleges the five "major" incidents of harassment by Dr. Akstein from September of 2002 up to the time she resigned: the invitation to Florida; the two breast touching incidents; the incident

on her birthday when Dr. Akstein pulled her into his lap, and the incident in the optical lab on a Saturday. *See* Background Facts *supra* at 14–17. Plaintiff did not report these incidents to anyone until March of 2003, with the exception of the Florida trip remark, which she admitted later was not worthy of complaint. *Id.* at 17.

Applying the *Harris* standard, the Court finds that Plaintiff's Complaint, and the allegations as admitted by Defendants, set forth a pattern of conduct that was severe, threatening, and humiliating, and that interfered substantially with Plaintiff's ability to do her job. It is true that some of the incidents of which Plaintiff complains, such as Dr. Akstein's telling her that she is beautiful, would not, by themselves, be sufficient to constitute sexual harassment. "A man can compliment a woman's looks ... on one or several occasions, by telling her that she is looking 'very beautiful,' or words to that effect, without fear of being found guilty of sexual harassment for having done so. Words complimenting appearance may merely state the obvious, or they may be hopelessly hyperbolic. Not uncommonly such words show a flirtatious purpose, but flirtation is not sexual harassment." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 584 (11th Cir.2000) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). And, except for the hugging and rubbing, none of the conduct could be described as frequent.

The most severe and threatening incidents that occurred involved Akstein's reaching for her breasts (and in one incident succeeding, albeit briefly). In their Brief, Defendants contend that the conduct attributed to Akstein is no more severe than that which the Eleventh Circuit found non-actionable in *Gupta v. Florida Bd. of Regents*, 212 F.3d at 584. The circum-

stances surrounding the incidents here, however, elevate it to a level beyond that found in *Gupta*. In *Gupta*, the Eleventh Circuit held that two incidents of touching in a period of six months, once on the plaintiff's knee, and once on the hem of her dress, while inappropriate, were not pervasive enough to constitute sexual harassment, as "[e]ach incident was only momentary, and neither was coupled with any verbal suggestions or advances." *Gupta*, 212 F.3d at 585.

Here, however, the two touching incidents were inherently sexual in nature—Dr. Akstein attempted to touch Plaintiff's breasts—and, while they were momentary, they were accompanied by clear verbal advances, thus further distinguishing this case from *Gupta*. Furthermore, during both of the breast touching incidents, as well as the head in lap incident, Plaintiff was alone with Dr. Akstein, the named physician of the Eye Center, either in his office or elsewhere on the premises. Given the intensity of the events, and the frequency of the less severe conduct leading up to them, Dr. Akstein's conduct could have been viewed as threatening. Moreover, this conduct occurred at work, as opposed to, for example, a non-business setting. Nothing about the setting would have put Plaintiff on guard that Dr. Akstein might approach her in such a manner (other than his past offensive conduct), and nothing about the setting should have given Dr. Akstein reason to believe that the conduct was welcome or expected. *Cf. Jones v. Clinton*, 990 F.Supp. 657 (E.D.Ark.1998).

Even if these incidents by themselves were not severe enough to alter the terms and conditions of her employment, Plaintiff has alleged a pattern of less severe verbal harassing and touching that, viewed in its entirety and with the breast incidents, is sufficiently pervasive to satisfy the *Harris* standard. In particular, the repeated and escalated nature of the physical contacts elevate the behavior from merely annoying to that which could be found unbearable.

This case, as Plaintiff argues, is more akin to *Johnson v. Booker T. Washington Broadcast Servs., Inc.*, 234 F.3d 501 (11th Cir.2000). In that case, the Eleventh Circuit found fifteen incidents within a four month period, which included unwanted massages, standing close enough for the harasser's body parts to touch the Plaintiff's, and the harasser's pulling his pants tight to reveal his private parts, were sufficiently severe or pervasive for a jury to conclude that they fell within the definition of harassment. 234 F.3d at 509.

Additionally, there is evidence that the incidents complained of interfered with Plaintiff's ability to do her job. Indeed, after the March of 2003 incident, when Dr. Akstein succeeded in briefly touching Plaintiff's breast, Plaintiff began to take sick leave, was admitted to the hospital for stomach pains (which she attributed to stress, Kimsey Dep. at 58–59), did not return to work, and submitted a resignation letter accusing Defendants of sexual harassment. SMF ¶ 59; Akstein Dep. at 205–06.[9] To show interference with one's employment sufficient to make a *prima facie* case of hostile work environment, "the plaintiff need not prove that his or her tangible productivity has declined as a result of the harassment. The employee need only show that the harassment made it more difficult to do the job." *Williams v. General Motors Corp.*, 187 F.3d 553, 557 (6th Cir.1999) (citing *Davis v. Monsanto Chem. Co.*, 858 F.2d 345, 349 (6th Cir. 1998)). Plaintiff's testimony is sufficient to create, at a minimum, an issue of fact as to whether Dr. Akstein's harassment made it

**9.** Although Plaintiff's resignation letter appears to have been examined during Dr. Akstein's deposition, this exhibit has not been made part of the record. *See* FN 4 *supra*.

more difficult for her to do her job. *See Johnson*, 234 F.3d 501 (inability to get along with co-host).

Thus, the Court finds that Plaintiff has presented a genuine issue of material fact regarding whether Dr. Akstein's conduct toward her rises to the level of sexual harassment that is severe or pervasive enough to affect a condition of Plaintiff's employment. Accordingly, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment, insofar as it is based on Plaintiff's inability to establish conduct that is so severe or pervasive as to create a hostile work environment, be **DENIED**.

(2) The Eye Center's Liability

■ In order to establish the final element of her *prima facie* case of hostile work environment claim, Plaintiff must present sufficient evidence that the Eye Center should be held liable for the actions of Dr. Akstein. Generally, where the harasser is a co-worker with no authority over the plaintiff, an employer is liable only if the plaintiff establishes that the employer knew or should have known of the harassment and failed to take remedial action to correct the situation. *Breda v. Wolf Camera & Video*, 222 F.3d 886, 889 (11th Cir. 2000); *Henson v. City of Dundee*, 682 F.2d 897, 905 (11th Cir.1982). If the harassment is perpetrated by a supervisor with actual authority over the plaintiff, however, the employer may be held vicariously liable even when it did not have knowledge of the allegedly harassing behavior. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Dees v. Johnson Controls World Serv., Inc.*, 168 F.3d 417, 421–23 (11th Cir.1999). It is undisputed that Dr. Akstein is the President and CEO of the Eye Center, and he has admitted that he had supervisory authority over all employees, including the authority to hire and fire. Compl. ¶ 5; Answer ¶ 5; Amended Answer ¶ 5; Akstein Dep. at 38, 47–48, 103, 237.

Thus, the relevant question is whether his conduct can be attributed to the Eye Center because of his control of the company.

In two opinions published on the same day, the Supreme Court addressed when an employer can be held vicariously liable for the discriminatory hostile environment of its supervisory employees. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662; *Burlington Indus. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In these cases, the Court held that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employer." *Faragher*, 524 U.S. at 778, 118 S.Ct. 2275. An employer, however, is not *always* automatically liable for the conduct of a supervisor.

When the supervisor's harassment culminates in a "tangible employment action, such as discharge, demotion, or undesirable reassignment," liability is automatic. *Faragher*, 524 U.S. at 807–08, 118 S.Ct. 2275; *Ellerth*, 524 U.S. at 762–63, 118 S.Ct. 2257. Typically, when there is no tangible employment action, an employer may avoid vicarious liability by showing that it exercised reasonable care to prevent and correct promptly any sexual harassing behavior, and that the employee being harassed unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Faragher*, 524 U.S. at 807–09, 118 S.Ct. 2275. In other words, when there is no tangible employment action and the employer's liability must be based on negligence, there is an affirmative defense which the employer may assert, which requires that the employer prove both that there were adequate procedures in place and that the employee failed to use them. "[W]hile proof that an employee failed to fulfill the

corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense." *Faragher*, 524 U.S. at 807–08, 118 S.Ct. 2275.[10]

Thus, *Faragher* held that, when the basis of liability is negligence, the employer is entitled to an affirmative defense. Because Plaintiff has failed to controvert Defendants' SMF, she has been found to admit both that the Eye Center had a sexual harassment policy in place, and that she unreasonably failed to take advantage of its complaint procedures and otherwise to mitigate the harm against her. *See* Background Facts *supra* at 6–9, 11–12, 15–17. As a result, under these facts, the Eye Center could prove itself not liable under a negligence theory for the actions of Dr. Akstein.

Negligence, however, is not the only basis for finding an employer liable for the acts of its supervisory employees. An alternative theory is alter ego liability, which would directly impute the conduct of Dr. Akstein, the President and CEO of the Eye Center, to the company. The Court finds that, based on the reasoning in *Faragher* and substantive interpretive case law, that Dr. Akstein's conduct, within his role as President and CEO of the business carrying his name, could be attributed to the company, and that his knowledge of his own behavior could be directly imputed to the organization, so that the Eye Center is not entitled to the *Faragher/Ellerth* affirmative defense.

In *Faragher*, the Supreme Court extensively discussed pre-existing case law related to this issue, citing with approval its earlier decision in *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), where it was not an issue whether a corporation vicariously could be liable for the harassment of its President, because that individual "was indisputably within that class of an employer organization's officials who may be treated as the organization's proxy." *Faragher*, 524 U.S. at 789, 118 S.Ct. 2275 (citing *Harris*, 510 U.S. at 19, 114 S.Ct. 367). The Court also cited another previous decision in *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). *See Faragher*, 524 U.S. at 791, 118 S.Ct. 2275. While the Court declined to issue a definitive rule on employer liability in *Meritor*, the Court stated that Congress intended for courts to be guided by agency principles in determining employer liability issues. *Meritor*, 477 U.S. at 72, 106 S.Ct. 2399.[11]

---

**10.** In *Pennsylvania State Police v. Suders*, 542 U.S. 129, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004), the Supreme Court held that when an official act does not underlie a constructive discharge, the extent to which a supervisor's alleged creation of a hostile work environment is uncertain, so that the employer should be able to establish the *Faragher/Ellerth* defense. An individual who alleges a compound hostile environment-discharge claim who alleges no official pecuniary action has a duty to mitigate the harm, but the Defendant bears the burden to prove that the Plaintiff failed in that regard. Thus, whether Plaintiff was constructively discharged has no

bearing on whether the Eye Center can assert the *Faragher/Ellerth* defense.

**11.** In *Meritor*, a female bank employee brought a sexual harassment claim against the bank and her supervisor under Title VII. The district court entered judgment in favor of the employer and the supervisor; the plaintiff appealed. The D.C. Circuit reversed, for, among other reasons, the bank, as the employer, was absolutely liable for sexual harassment by its supervisory personnel, whether or not the employer knew about it. The Supreme Court affirmed the decision, but noted that the D.C. Circuit erred in concluding that employers are automatically liable for their supervisors' sexual harassment. While

The Eleventh Circuit, although it has not issued a ruling on this issue, has intimated its interpretation of *Faragher* and *Ellerth* to extend automatic liability to corporations for sexual harassment by its proxies or alter egos. In *Dees v. Johnson Controls World Servs., Inc.*, it discussed the various means of automatic liability under *Faragher* and *Ellerth*, to include instances when a supervisor: violates a "non-delegable duty" of the employer; uses "apparent authority" granted by the employer;[12] was aided in committing the harassment by the existence of his agency relationship with the employer,[13] or "holds such a high position in the company" that he could be considered the company's "alter ego." *Dees*, 168 F.3d 417, 422–23 (11th Cir.1999) (internal quotations and citations omitted). *See also Pospicil v. The Buying Office, Inc.*, 71 F.Supp.2d 1346 (N.D.Ga. 1999) (material issue of fact as to whether employer could be held directly or vicarious liable; harasser was principal shareholder and, along with other management member, had received notice of complaints) (citing *Dees*, 168 F.3d at 421).

Although the harasser in *Dees* was not alleged to be an alter ego or a proxy of the company, and therefore, the issue of alter ego liability was not at issue before that Court, this Court is aware of no authority in this Circuit or elsewhere holding that an individual who is undisputably within such a position as to be a company's alter ego

does not invoke strict liability on the company for his harassing behavior. Furthermore, at least two courts in this Circuit—including this District—have held an employer strictly liable for the harassing conduct of its owner. *See Pospicil*, 71 F.Supp.2d 1346; *Tillery v. ATSI, Inc.*, 242 F.Supp.2d 1051 (N.D.Ala.2003) (holding employer strictly liable for harassment by its owner).

Likewise, many other courts following the Supreme Court's reasoning in *Faragher* have found that vicarious liability automatically applies when the harassing supervisor is "indisputably within that class of an employer organization's officials who may be treated as the organization's proxy." *Ackel v. Nat'l Communications, Inc.*, 339 F.3d 376, 384–85 (5th Cir.2003) (quoting *Faragher*, 524 U.S. at 789, 118 S.Ct. 2275); *see also Johnson v. West*, 218 F.3d 725, 730 (7th Cir.2000); *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493 (9th Cir.2000); *Mallinson–Montague v. Pocrnick*, 224 F.3d 1224 (10th Cir.2000). *See also United States Equal Employment Opportunity Commission v. Reeves*, 84 Empl. Pract. Dec. 41,-560, No. CV 0010515DTRZX, 2003 WL 22999369 (C.D.Cal. Dec.8, 2003); *Velez Cortes v. Awning Windows*, 253 F.Supp.2d 206 (D.P.R.2003).

Based on the available law in this Circuit and the weight of authority elsewhere, the

---

declining to make a rule on the issue, the Court noted that Title VII "evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible." *Meritor*, 477 U.S. at 72, 106 S.Ct. 2399 (citing Restatement (Second) of Agency § 219–37 (1958)). The Court also stated, however, that common law principles may not be transferable in "all their particulars" to Title VII, and that "absence of notice to an employer does not necessarily insulate that employer from liability." *Id.*

**12.** The Eleventh Circuit noted the Supreme Court's conclusion that most cases of supervisor sexual harassment should not be analyzed under an apparent authority theory. *Dees*, 168 F.3d at 422, n. 10.

**13.** The Eleventh Circuit also noted the Court's suggestion that most cases of supervisor sexual harassment are analyzed under the agency relationship theory, which was the genesis of the *Faragher/Ellerth* affirmative defense. *Dees*, 168 F.3d at 423; *Burlington*, 524 U.S. at 757–65, 118 S.Ct. 2257, *Faragher*, 524 U.S. at 803–08, 118 S.Ct. 2275.

Court must conclude that the Eye Center is not entitled to the *Faragher/Ellerth* defense. The Court finds, therefore, that the Eye Center may be held strictly liable for Dr. Akstein's conduct, if a jury concludes that Plaintiff was subjected to sexual harassment based on a hostile work environment. Accordingly, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment based on the affirmative defense to employers provided in *Faragher* and *Ellerth* be **DENIED**.[14]

### (3) Constructive Discharge [15]

▇ To prove constructive discharge, a plaintiff must show that her "working conditions were so difficult or unpleasant that a reasonable person would have felt compelled to resign." *Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir.1996). There must be a "high degree of deterioration in working conditions, approaching the level of intolerable." *Hill v. Winn–Dixie*, 934 F.2d 1518, 1527 (11th Cir.1991). Constructive discharge is difficult to show if the supposedly "intolerable" conditions last for only a short time and the employer is not given sufficient time to remedy the situation. *Kilgore*, 93 F.3d at 754. The employer's actions leading to a

plaintiff's decision to resign "must have been deliberate, that is, they 'must have been taken with the intention of forcing the employee to quit.'" *Cross v. Southwest Recreational Ind.*, 17 F.Supp.2d 1362, 1376 (N.D.Ga.1998) (citation omitted); *Richio v. Miami–Dade County*, 163 F.Supp.2d 1352 (S.D.Fla.2001) (claim under the Americans with Disabilities Act) (citing *Henson v. City of Dundee*, 682 F.2d 897, 907 (11th Cir.1982)).

Further, even where, as here, a plaintiff's hostile work environment claim may survive summary judgment, the burden of establishing constructive discharge is much higher. *Matthews v. City of Gulfport*, 72 F.Supp.2d 1328, 1338 (M.D.Fla. 1999) (citing *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir.1992)); *see also Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1005 (7th Cir.1994) ("to be actionable under Title VII the work conditions need to be more than merely intolerable—they need to be intolerable in a discriminatory way."). *And see Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir.2001) (stating that "[t]he standard for proving constructive discharge is higher than the standard for proving a hostile work environment.").

14. The Court notes that, although Plaintiff did not address an alter ego theory of liability in her Response to Defendants' Motion for Summary Judgment, the Eye Center did not move for summary judgment on an alter ego theory. And, while Plaintiff did not expressly include such a theory of liability in her Complaint, she did plead in her Complaint, and Defendants admitted in their Answer and Amended Answer, that Dr. Akstein is the President and CEO of the Eye Center, which is enough to have put Defendants on notice that she may proceed on a theory of direct liability based on Dr. Akstein's position at the Eye Center. Further, in the Joint Preliminary Report, Plaintiff summarized the basis of the Eye Center's liability as its having "condoned and ratified" Dr. Akstein's conduct, although the parties did not list alter ego liability as a

triable issue. Joint Preliminary Report [11] at 4–5.

Moreover, it is readily apparent under the law of this Circuit that a company is automatically liable for the harassment of its proxy. As a result, the Eye Center is not entitled to the *Faragher/Ellerth* defense. As this Court is compelled to follow the law of this Circuit, it cannot allow Defendant to proceed with an affirmative defense to which it is not entitled.

15. As discussed above, the Court is aware of no authority suggesting that constructive discharge is itself a claim under Title VII, and the distinction between Plaintiff's *quid pro quo* and hostile work environment claims is minimal, if not nonexistent. *See* Discussion *supra* at FN 8, 34–35. Nevertheless, the Court will discuss Plaintiff's allegation of constructive discharge separately.

In addition, many courts construing the constructive discharge standard have found that a plaintiff "must show more than the working conditions were not to her liking; she must prove that the alleged intolerability of working conditions resulted from acts of discrimination." *Stedman v. Bizmart, Inc.*, 219 F.Supp.2d 1212 (N.D.Ala.2002) (citations and quotations omitted).

The substance of Plaintiff's complaints about her working conditions is discussed in detail *supra* at 12–17, 37–43. In summary, the basis of Plaintiff's constructive discharge theory centers around her relationship with Dr. Akstein. Plaintiff, however, has not pointed to any connection between her experiences and her resignation other than the conclusory allegation that "[t]here can be little question that a reasonable person in her position would have been compelled to resign". Pl.'s Br. at 18 *Griffin v. GTE Florida, Inc.*, 182 F.3d 1279 (11th Cir.1999) (finding it "doubtful" that plaintiff could prove constructive discharge by showing the stress he endured from his boss).

Plaintiff left the Eye Center, never to return, immediately after her fifth major encounter with Dr. Akstein, and only days within her only first complaint of sexual harassment against Dr. Akstein.[16] This timing strongly mitigates against a finding of constructive discharge, in that Plaintiff did not allow any opportunity to gauge whether Dr. Akstein's conduct toward her would have improved following her internal complaint of sexual harassment. As courts in this Circuit have held, Title VII does not create a cause of action for constructive discharge where—as happened here—the employee assumes the worst and resigns before giving management a

chance to rectify the situation. *Bivins v. Jeffers Vet Supply*, 873 F.Supp. 1500, 1509 (M.D.Ala.1994), *citing Garner v. Wal–Mart Stores, Inc.*, 807 F.2d 1536 (11th Cir.1987); *Jones v. USA Petroleum Corp.*, 20 F.Supp.2d 1379 (S.D.Ga.1998) (although manager's sexually harassing conduct towards two female employees may have rendered their working conditions intolerable, neither employee was constructively discharged, for purposes of their Title VII claims, as they failed to give employer notice of manager's behavior by utilizing employer's internal grievance procedure, or to otherwise notify employer, thus depriving employer of a reasonable opportunity to remedy the situation). *Matthews v. City of Gulfport*, 72 F.Supp.2d 1328, 1338 (M.D.Fla.1999) (citing *Landgraf v. USI Film Products*, 968 F.2d 427, 430 (5th Cir.1992)); *see also Chambers v. American Trans Air. Inc.*, 17 F.3d 998, 1005 (7th Cir.1994) ("to be actionable under Title VII the work conditions need to be more than merely intolerable—they need to be intolerable in a discriminatory way."). *And see Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir.2001) (stating that "[t]he standard for proving constructive discharge is higher than the standard for proving a hostile work environment.").

Further, contrary to Plaintiff's allegations regarding the intolerability of her working conditions, just two months before she left and, and more importantly, following the bulk of Dr. Akstein's activities of which she complains, she wrote a letter to Bunch stating that Bunch was the "best and wonderful," and that Plaintiff was "proud to be an employee." Background Facts *supra* at 17.

---

**16.** Despite Plaintiff's uncited assertion that she had "repeatedly reported such conduct to her supervisors without any action being taken to help her or to prevent a reoccurrence,"

Plaintiff has admitted that her first formal complaint of sexual harassment was not until March of 2003. *See* Background Facts *supra* at 17; Kimsey Dep. at 288.

Finally, even if Plaintiff's internal complaint of sexual harassment would have been fruitless had she stayed employed with the Eye Center, to establish that she was constructively discharged, Plaintiff must show that it was the management's *purpose* to make her resign. *Cross,* 17 F.Supp.2d at 1376. Plaintiff has put forth no evidence that Dr. Akstein or the Eye Center (acting through Dr. Akstein or any other management employees) wanted her to quit. Instead, Plaintiff's constructive discharge claim is based only on her subjective perception of an abusive environment and, while the Court finds that this may be sufficient to create a *prima facie* case of a sexually hostile work environment, it is not sufficient alone to state a claim for constructive discharge. Because the uncontested evidence in this case does not demonstrate that Plaintiff's job conditions were so unbearable that she had no reasonable choice but to resign, and because she has produced no evidence that Defendants harassed her with the purpose of making her leave, as a matter of law she may not recover under Title VII on a theory of constructive discharge. Accordingly, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment on Plaintiff's Claim for Sexual Harassment with Tangible Employment Action be **GRANTED**, and that this claim (Count I of Plaintiff's Complaint), be **DISMISSED**. On the other hand, because the uncontested evidence creates a genuine issue of material fact as to whether Dr. Akstein's sexual harassment was severe or pervasive and as to whether he was the alter ego of the corporate employer Defendant, the Eye Center, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment be **DENIED** as to Count III of Plaintiff's Complaint.

d. *Plaintiff's Gender Discrimination Claims Counts II and IV*

(1) Count II: Constructive Discharge Theory

■ Plaintiff does not contend that she has produced any direct evidence of any discriminatory intent on behalf of Defendant;[17] thus, her claim of discriminatory treatment on the basis of her gender rests purely on circumstantial evidence and must be analyzed under the *McDonnell Douglas–Burdine* framework. Under this framework, a plaintiff can generally establish a *prima facie* case of unlawful discrimination under Title VII by showing that: (1) she is a member of a protected class;[18] (2) she was subjected to an adverse employment action by her employer; (3) she was qualified for the job in question, and (4) her employer treated similarly situated employees outside her protected classification (*i.e.* those of a different sex) more favorably than it treated her. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *see also Wright v. Southland Corp.,* 187 F.3d 1287, 1290 (11th Cir.1999); *Holi-*

17. Plaintiff's Brief is full of loose references to "direct" evidence. Plaintiff, however, has not argued that she has presented any direct evidence as that contemplated by the Eleventh Circuit in Title VII gender discrimination cases. *See* Discussion *supra* at 24–26.

18. Although courts continue to include the requirement that a plaintiff establish as part of a *prima facie* case that he or she is a member of a "protected class," it is clear that individuals of any sex, race, or religion may pursue claims of employment discrimination

under Title VII. *Wright v. Southland Corp.,* 187 F.3d 1287, 1290, n. 3 (11th Cir.1999) (citing *McDonald v. Santa Fe Trial Transp., Co.,* 427 U.S. 273, 278–80, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976)). Thus, in cases alleging discrimination on the basis of gender (as opposed to harassment cases) the key element of the *prima facie* case is establishing that persons outside of the plaintiff's classification (*i.e.* those of a *different* gender), are treated more favorably by the employer. *See Wright,* 187 F.3d at 1290, n. 3.

*field v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997).

Assuming that Plaintiff were able to establish that she was subjected to an adverse job action because she was constructively discharged, which the Court already has found that she cannot, *see* Discussion *supra* at 47–52, the Court finds that she cannot show that a similarly situated male employee was treated more favorably than she was, and her gender discrimination claim fails for that reason as well. When a plaintiff attempts to establish a claim of discrimination by pointing to more favorable treatment toward other employees, the plaintiff first must identify an employee outside of her protected class to which she is "similarly situated in all relevant respects." *Holifield,* 115 F.3d at 1562; *see also Knight v. Baptist Hospital of Miami,* 330 F.3d 1313, 1316 (11th Cir. 2003); *Silvera v. Orange County School Bd.,* 244 F.3d 1253, 1259 (11th Cir.2001). If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate when no other evidence of discrimination is present. *Holifield,* 115 F.3d at 1562. In addition, the plaintiff must point to evidence that the identified comparator committed the same or similar infractions as the plaintiff, but did not receive similar disciplinary treatment from the employer. Indeed, the plaintiff must show that the comparator's misconduct was "nearly identical" to the alleged misconduct of the plaintiff in order "to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Silvera,* 244 F.3d at 1259 (*quoting Maniccia v. Brown,* 171 F.3d 1364, 1368–69 (11th Cir.1999)).

Here, the evidence shows, and Plaintiff has admitted, that there were no male technicians or opticians at the Eye Center while Plaintiff was employed there. *See,* e.g., SMF ¶ 55 (Kimsey Dep. at 290–91). Thus, Plaintiff has failed to come forward with any similarly situated male employee who was treated more favorably by the Eye Center than she was and, as a result, her claim fails. Further, as Plaintiff did not address this claim in her Brief, the Court finds that she has abandoned her claim for gender discrimination with tangible employment action. Accordingly, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment on Plaintiffs' claim for "gender discrimination with tangible employment action" be **GRANTED** and that this claim (Count II of her Complaint) be **DISMISSED.**

(2) Count IV: Gender Discrimination Without Adverse Employment Action

■ In Count IV, Plaintiff alleges that she suffered gender discrimination "without adverse employment action." This is a legal impossibility, as a plaintiff must show that she was subjected to an adverse job action as part of a *prima facie* case of discrimination under the *McDonnell Douglas–Burdine* framework. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *see also Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997). As Plaintiff has failed to allege that she was subjected to an adverse employment action, then her claim of gender discrimination "without adverse employment action" alleged in Count IV fails. Further, Plaintiff has failed to argue this claim in her Brief, and it fails for this reason as well. Accordingly, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment on Count IV be **GRANTED** and that this Count be **DISMISSED.**

e. *Punitive Damages*

In her Complaint, Plaintiff asks for punitive damages as a remedy for Defendants' alleged wrongs. Defendants have moved for summary judgment on this "claim"

with respect to her Title VII claims only. The Court concludes that, because it is recommending that Plaintiff's hostile work environment claim (Count III) survive summary judgment, because Defendants have not moved for summary judgment on Plaintiff's battery and false imprisonment claims, because of the existence of questions of fact as to intent, and because the severity or pervasiveness of certain acts must be resolved by a jury in order to determine whether Plaintiff has any viable claim or claims on which damages may be awarded, Defendants' motion for a judgment at this time that Plaintiff is not entitled to punitive damages under her Title VII claim is premature and subject to material questions of fact properly before a jury.

### 4. PLAINTIFF'S STATE LAW CLAIMS

#### a. Intentional Infliction of Emotional Distress

■ In addition to her federal claims, Plaintiff has asserted a claim under Georgia law for intentional infliction of emotional distress. Georgia courts have recognized the tort of intentional infliction of emotional distress by stating:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

*Yarbray v. Southern Bell Tel. & Tel. Co.,* 261 Ga. 703, 706, 409 S.E.2d 835, 837 (1991) (quoting The Restatement (Second) of Torts § 46(1) (1965)); *see also Bridges v. Winn–Dixie Atlanta, Inc.,* 176 Ga.App. 227, 229, 335 S.E.2d 445 (1985). In order to sustain a cause of action, the defendant's actions must have been so terrifying as naturally to humiliate, embarrass or frighten the plaintiff. *Cornelius v. Auto*

*Analyst, Inc.,* 222 Ga.App. 759, 476 S.E.2d 9, 11 (1996) ("The conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.") (citation and internal quotation marks omitted); *see also Moses v. Prudential Ins. Co. of America,* 187 Ga.App. 222, 224, 369 S.E.2d 541 (1988); *Sossenko v. Michelin Tire Corp.,* 172 Ga.App. 771, 772, 324 S.E.2d 593 (1984); Comment d § 46(1) of the Restatement (Second) of Torts ("Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and leave him to exclaim 'Outrageous!' ") (quoted in *Yarbray,* 261 Ga. at 706, 409 S.E.2d at 837).

■ To make out a *prima facie* case of intentional infliction of emotional distress under Georgia law, a plaintiff must prove each of the following elements: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. *Bridges v. Winn–Dixie Atlanta, Inc.,* 176 Ga.App. 227, 230, 335 S.E.2d 445, 447–48 (1985); *see also Gaston v. Southern Bell Tel. & Tel. Co.,* 674 F.Supp. 347, 352 (N.D.Ga. 1987). The burden that a plaintiff must meet in order to prevail on this claim is a stringent one. *Bridges,* 176 Ga.App. at 229, 335 S.E.2d at 447.

Whether conduct is sufficiently outrageous and whether the resulting emotional distress is sufficiently severe to support a claim of intentional infliction of emotional distress are questions of law. *Yarbray,* 409 S.E.2d at 838; *accord Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1229 (11th Cir. 1993). "If the evidence shows that reasonable persons might find the presence of

extreme and outrageous conduct and resultingly severe emotional distress, the jury then must find the facts and make its own determination." *Yarbray*, 409 S.E.2d at 838.

Georgia courts recognize that the existence of an employer-employee relationship, where one party may exercise control over the other, may produce a character of outrageousness that otherwise might not exist. *Bridges*, 176 Ga.App. 227, 335 S.E.2d at 448.

> The workplace is not a free zone in which the duty not to engage in willfully and wantonly causing emotional distress through the use of abusive or obscene language does not exist. Actually, by its very nature, it provides an environment more prone to such occurrences because it provides a captive victim who may fear reprisal for complaining, so that the injury is exacerbated by repetition, and it presents a hierarchy of structured relationships which cannot easily be avoided. The opportunity for commission of the tort is more frequently presented in the workplace....

*Coleman v. Housing Authority of Americus*, 191 Ga.App. 166, 171, 381 S.E.2d 303, 306 (1989); *see also Lightning v. Roadway Express, Inc.*, 60 F.3d 1551, 1558 (11th Cir.1995). Even where an employment relationship exists, however, "major outrage in the language or conduct complained of is essential to the tort." *Bridges*, 176 Ga. App. 227, 335 S.E.2d at 448. Comments made within the context of one's employment may be horrifying or traumatizing, but are generally considered "a common vicissitude of ordinary life." *Peoples v. Guthrie*, 199 Ga.App. 119, 121, 404 S.E.2d 442 (1991).

The Georgia Court of Appeals addressed this standard of outrageousness in an employment context in *Sossenko v. Michelin Tire Corp.*, 172 Ga.App. 771, 324 S.E.2d 593 (1984), in which it affirmed the trial court's grant of summary judgment in an action brought by a plaintiff against his former employer. The plaintiff had alleged that the defendant and its representatives had made approximately ten threats against his future employment and retirement benefits, as well as his life. The court held that these threats, considered individually or collectively, did not rise to the requisite level of outrageousness and egregiousness. *Sossenko*, 172 Ga.App. at 773, 324 S.E.2d at 595. The court contrasted the defendant's conduct with those cases in which courts have found outrageous and egregious conduct, and found that the acts complained of did not rise to a sufficient level of outrageousness. *See id.* (citing *American Finance & Loan Corp. v. Coots*, 105 Ga.App. 849, 125 S.E.2d 689 (1962) (defendant terrorized a frightened plaintiff at gunpoint in an attempt to collect a bill); *Stephens v. Waits*, 53 Ga.App. 44, 184 S.E. 781 (1936) (defendant physically intimidated frightened mourners as they attempted to bury a family member at a cemetery)).

In the instant action, Plaintiff bases her intentional infliction of emotional distress claim upon the unwanted attention, comments, and contact by Akstein. She has alleged that she made repeated reports of such behavior to her employer that were met with inaction. She argues that she has suffered from severe mental and emotional distress from the events, and that she required hospital treatment from internal bleeding that resulted from the stress she endured. *See* Pl.'s Br. at 21. The Court acknowledges that Plaintiff may have indeed suffered greatly as a result of the stress she was subjected to while working for the Eye Center. While Dr. Akstein's conduct may have been offensive and upsetting to Plaintiff, however, when measured against the facts in the relevant cases discussed above, the Court cannot find that the conduct was so outrageous

**1308**

that it could support a finding that Dr. Akstein is liable to Plaintiff for a claim of intentional infliction of emotional distress.

Thus, the Court concludes that Dr. Akstein's conduct does not rise to the requisite level of outrageousness and egregiousness to support a claim of intentional infliction of emotional distress under Georgia law. Furthermore, as Dr. Akstein is not liable to Plaintiff under this claim, there is no basis for holding Defendant the Eye Center liable on a theory of *respondeat superior* or any other theory. Accordingly, the Court **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** with respect to both Defendants on Count V Plaintiff's Complaint, and that this claim be **DISMISSED**.

### b. *Unsafe Workplace* [19]

▮ In Count VI of her Complaint, Plaintiff alleges that "Defendant Akstein Eye Center, P.C. owed a duty under Georgia law to the Plaintiff as well as to the rest of its employees to maintain a work environment free from verbal abuse, misconduct, gender discrimination and abus [ive] employment actions rooted in gender discrimination and sexual harassment." Plaintiff alleges that the Eye Center breached that duty, and the Court infers that Plaintiff has based this alleged breach on the unwelcome sexual and physical contact from Dr. Akstein.

As Defendants point out, the Court of Appeals of Georgia appears to have addressed this issue, and has found that, based on allegations amounting to emotional distress and harassment, an employer cannot be held liable for a breach of the duty to maintain a safe working environment.

The employer cannot reasonably be expected to be an absolute guarantor of a physically or emotionally "safe" workplace; his duty is only that of ordinary care. *Smith v. Ammons,* 228 Ga. 855, 188 S.E.2d 866 (1972). Moreover, the "safe workplace" cases cited by appellants Cline and Harper demonstrate that the applicable law, in imposing on the employer the duty to maintain a safe workplace, contemplates "safety" in the physical sense; that is, that the workplace be organized and maintained in such a manner as to minimize the likelihood of physical injury—not (alas!) that it be an utopian place where each employee is guaranteed optimal working conditions and kind, courteous, and supportive treatment at all times by all present. *Walker v. Gen. Motors Corp.,* 152 Ga.App. 526, 263 S.E.2d 266 (1979). There is no allegation that appellants' physical safety was seriously threatened at any time during the course of the alleged harassment.

*Cline v. McLeod,* 180 Ga.App. 286, 293, 349 S.E.2d 232, 238 (1986). Plaintiff has not alleged a physical injury here, other than symptoms resulting from stress, and so, she cannot state a claim under this theory.

In any event, as Plaintiff has not defended her unsafe work environment claim in her Brief, the Court finds that, even if she could state such a claim, she has abandoned it by failing to argue it. Accordingly, the Court **RECOMMENDS** that Count VI of Plaintiff's Complaint be **DISMISSED**.

**19.** As with Plaintiffs' other claims, she does not specify whether this claim is alleged against only the Eye Center, or whether it is alleged against both the Eye Center and Dr. Akstein. As Plaintiff alleges in Paragraphs 41 and 42 of her Complaint, however, that any duty belonged to the Eye Center and that the Eye Center breached the applicable duty, the Court infers that Plaintiff intended to assert this claim against the Eye Center only.

## IV. *RECOMMENDATION*

For all the above reasons, IT IS **RECOMMENDED** that Defendant's Motion for Summary Judgment [49] be **GRANTED IN PART AND DENIED IN PART**. The Court **RECOMMENDS** that Counts I, II, IV, V, and VI be **DISMISSED** as to both Defendants, and that Count III be **DISMISSED** as to Defendant Akstein, but that Count III remain as to Defendant the Eye Center. In addition, Defendants' Motion [52] to Strike is **DENIED WITHOUT PREJUDICE**. Defendants may refile their Motion to Strike at a later time if this case proceeds to trial.

IT IS SO RECOMMENDED this 18th day of October, 2005.

## *ORDER*

Attached is the report and recommendation of the United States Magistrate Judge in this action in accordance with 28 U.S.C. § 636(b)(1) and this Court's Civil Local Rule 72.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the report and recommendation within ten (10) days of service of this Order. Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the report and recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review. *United States v. Slay,* 714 F.2d 1093 (11th Cir.1983).

The Clerk is directed to submit the report and recommendation with objections, if any, to the District Court after expiration of the above time period.

IT IS SO ORDERED this 18th day of October, 2005.